[Civil No. 4099.  Filed April 1, 1940.]

[100 Pac. (2d) 988.]

L. H. ANTHONY, Appellant, v. PHOENIX UNION HIGH SCHOOL DISTRICT, MARICOPA COUNTY, STATE OF ARIZONA, a Municipal Corporation, Appellee.

Mr. J. J. Cox, Mr. A. Y. Moore and Mr. B. L. Hibbert, for Appellant.

Mr. Richard F. Harless, County Attorney, and Mr. Charles B. McAlister, Deputy County Attorney, for Appellee.

ROSS, C. J.—On May 8, 1934, the Phoenix Union High School District entered into a written contract with L. H. Anthony, a duly licensed school teacher, employing him as one of its teachers for the ensuing year, beginning September 1, 1934, and agreeing to pay him therefor $1,880 in monthly installments. One of the conditions of the contract was that the district might dismiss him for unfitness or incompetency, in which event the salary would cease.

Before the school year commenced, on, to wit, July 16, 1934, the Board of Education of said school district notified Anthony by registered mail to appear before it at 11 A. M., July 21, 1934, and show cause why his contract should not be canceled ''for unfitness as provided in said contract.'' Anthony, although he knew of such

meeting and telephoned or caused the partner of his attorney to telephone to the board to have the hearing postponed to a future date, made no appearance at such hearing. The board held a formal meeting at the time and place designated, took evidence on the charge of Anthony's unfitness, and adopted a resolution canceling his contract.

Thereafter, on October 3, 1934, Anthony brought this action for the stipulated salary claiming that the school district had breached its contract and damaged him in that sum. The school district answered (1) that its board had held a formal hearing on the charge of unfitness of plaintiff and canceled his contract, and (2) that before plaintiff had a right to maintain the action he must have appealed from the decision of the board to the county superintendent of schools.

The case was tried with a jury and resulted in favor of the defendant. The plaintiff has appealed and insists that he was not given a fair trial. However, before we take up errors in the trial, it is necessary to determine whether plaintiff was entitled to a trial in the courts on the question of his fitness before he had exhausted the remedy by appeal to the superintendent, or at all. Section 1042, Revised Code of 1928, reads:

"Dismissed teacher may appeal. In case of the dismissal of any teacher before the expiration of any contract entered into between such teacher and the board of trustees, for alleged unfitness or incompetence, appeal may be had to the county superintendent."

Although we have held that a teacher with a written contract to teach in the schools of Arizona must be given an opportunity to be heard before his contract is canceled for unfitness or incompetency (*Public School District No. 11* v. *Holson,* 31 Ariz. 291, 252

Pac. 509, 511), this is the first case where it has been urged that the teacher who claims that his dismissal was unjustified must appeal his case to the superintendent before he may resort to the courts for redress. Whether the remedy by appeal to the superintendent is an adequate or any remedy is the question. The omission to state the effect, if any, of the superintendent's decision on the rights of the parties and what they should or could do subsequent thereto suggests the uselessness of the appeal. If the superintendent disapprove the decision of the board, he is not given the power to order the teacher reinstated. If he approve the board's decision, such approval is not made final or conclusive on anyone. Whatever the superintendent's decision may be, it is not binding upon the teacher or the school district. After his decision the parties are left in exactly the same position as before.

The law will not require a party to do a useless thing before he may invoke the assistance of the courts in the vindication of his rights. If an appeal to the superintendent is to accomplish anything, the law should be amended to state the effect of such officer's decision upon the rights of the parties and to provide for subsequent procedure to enforce or protect those rights.

In the Holson case, *supra,* after citing section 1042, *supra,* we said:

"This language does not directly confer the power of dismissal upon the trustees, but recognizes the existence of such power when the teacher is unfit or incompetent, but in no other case. If the teacher is fit and competent, the power of dismissal does not exist, as the expression of the one excludes the other. The Legislature, in naming the grounds upon which a dismissal could be made by the trustees, especially where such grounds are broad enough to cover almost every kind of disqualification imaginable, must be presumed

to have intended such grounds to be exclusive and a prohibition against the exercise of the power of dismissal whimsically, arbitrarily, or capriciously, or upon a mere desire for a change.

" . . . the right to dismiss a teacher and thereby terminate her contract of employment exists only when she is shown, after an opportunity to be heard, to be unfit or incompetent to perform her contract. *In re Farish,* 18 Ariz. 298, 158 Pac. 845."

■■ The effect of the decision of the Board of Education, after the teacher has been heard or given an opportunity to be heard on the charge of unfitness, is one of the vital questions for determination. That he must be advised of the charge against him and given an opportunity to refute or explain such charge we think is imperative. However, the procedure for such hearing, none being prescribed by the statute, is such as the board may adopt. 24 R. C. L. 618, sec. 75. When the teacher has been afforded an opportunity to be heard, and the board takes and hears evidence and decides he is an unfit person to teach, the decision we apprehend, ought to have some weight. The law impliedly places the duty of passing on the fitness or unfitness of a teacher, when the occasion arises, upon the board. No other body under our law has that right. The statutes do not provide that the decision of the board may be reviewed or set aside.

If the teacher is given a fair trial by the board, or if he default after notice of the place and time for hearing the charge against him, and the board takes evidence and reaches the conclusion therefrom that he is unfit to teach, we think under the law its decision is binding. It is stated in 56 Corpus Juris, 409, section 350:

" . . . in the absence of a statutory provision to the contrary, where a school board dismisses a teacher in

accordance with the statutory provisions, such act of dismissal is conclusive, in the absence of fraud, corruption, or oppression, and is not subject to review by the courts. . . . ''

In *Baird* v. *School Dist. No. 25, Fremont County,* 41 Wyo. 451, 287 Pac. 308, 313, in a situation very much like ours in the facts and law, the court went fully into the decisions and concluded therefrom that the weight of authority was to the effect that the dismissal of a teacher for cause upon a notice and hearing by the school board was final. The court said:

''And the reasons for the rule that the determination of a school board should be final when a teacher is discharged for cause after notice and hearing are certainly just as cogent when the right to discharge is implied under the statute, as well as when it is given expressly. To make the jury the final arbiter of the sufficiency of the cause of dismissal in all cases would to a large extent take the power of removal away from the school board; for that board, fearful that the jury might not agree with it, would hesitate to act, and in most instances shrink from dismissing a teacher, though adequate cause might exist, lest, among other reasons, double liability might be placed upon the district, compelling it to pay both the discharged teacher as well as the teacher employed in his or her place. . . . ''

The Board of Education, when it dismissed plaintiff on July 21, 1934, was in possession of the following undisputed facts: Plaintiff had been arrested by Gila county officers for killing game out of season, had pleaded guilty and paid a fine of $80. He had also been arrested for resisting an officer of Gila county and held in $5,000 bail. His wife had caused his arrest for kidnaping her from her parents' home and taking her to a wild and desolate place in Tonto Basin and holding her there for eight days. She had filed a complaint against him for divorce on the grounds of

cruelty. These things had been published in the local newspapers with considerable elaboration and no doubt many of the patrons of the school district had read them. Some of the patrons had complained to the board and stated that they would not send their children if plaintiff was to be their teacher.

Plaintiff, we think, admits the different arrests and that he was sued by his wife for divorce but contends that neither killing wild game out of season nor family troubles is any evidence of unfitness to teach. Certainly such publicity concerning a teacher of youth is not desirable, whether true or untrue. It could not help leaving in the minds of those patrons of the school who read or heard about it unfavorable impressions. To kill wild game out of season, we say, is bad only because it is prohibited and not bad in itself. But there are some of our citizens, because of the positions they occupy in the community, who should be exemplars of the laws—those *malum prohibitum* as well as those *malum in se*—and among these we would class our public school teachers. We would place a teacher who knowingly violates the game laws in a class with those who persistently violate the rules of the road.

■ The question as to whether these happenings unfitted the plaintiff to continue as a teacher in the public schools of Phoenix, however, was one for the board and the board having decided it against the plaintiff, upon evidence which certainly shows that it did not act fraudulently or corruptly or oppressively or arbitrarily or whimsically or capriciously or upon a mere desire for a change, the decision should be treated as conclusive.

The several different escapades in which the plaintiff was a participant, his several arrests and his family troubles were certainly unusual and the facts

thereof were doubtless on the tongues of many of the patrons and students of the Phoenix Union High School. The fact that these several things happened in so short a time, all between the time he was employed and early in July, could but arouse suspicion that plaintiff was not normal and that his mental condition was such as to unfit him to handle properly the immature children of the school. In *Baird* v. *School Dist. No. 25, supra,* some examples of what will disqualify a teacher are given and from them we infer that the facts of this case bring it well within the rules of disqualification adopted in other jurisdictions.

■■ The board's trial of the charges of unfitness was informal. None of the evidence upon which it acted was given under oath. The plaintiff takes the position that the board was exercising judicial powers and should have accepted no evidence that was not given under oath. The law does not make any provision for the trial before the board but leaves it entirely with that body to adopt the procedural rules that will safeguard and protect the rights of all parties. The board may accept, as it did in this case, information bearing upon the issue before it, whether obtained under oath of the informant or not. It is not supposed to adhere to the strict rules of evidence ordinarily observed in the courts. Like other administrative bodies, it may within certain limits accept hearsay evidence. We have held that the State Industrial Commission, a body which exercises judicial powers, may accept hearsay in passing upon claims for compensation (*Ocean Accident & Guarantee Corp.* v. *Industrial Com.,* 34 Ariz. 175, 269 Pac. 77), but if that was not the rule, plaintiff is in no position to complain for it is not denied that the ultimate facts before the board at the time it canceled his contract were true.

 Complaint is made of the admission of evidence and also of the court's instructions, but from what we have said it follows that the issue of fitness should not have been submitted to the jury. That being so, error in the admission of evidence or in the instructions, if there was error, was harmless.

The judgment of the lower court is affirmed.

LOCKWOOD and McALISTER, JJ., concur.