**262 P.2d 387**

**TEMPE UNION HIGH SCHOOL DIST. v. HOPKINS.**

**No. 5765.**

Supreme Court of Arizona.

Oct. 26, 1953.

William P. Mahoney, Jr., County Atty., Jos. F. Walton, Asst. County Atty., Phoenix, for appellant.

Robert & Price, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal from a judgment ordering a peremptory writ of mandamus against appellant and from an order denying its motion for a new trial. Appellee and appellant will be hereinafter referred to as plaintiff and defendant respectively.

The facts are that on March 14, 1952, plaintiff was employed as a teacher by defendant and was certified as a "probationary teacher" under the provisions of chapter 52, Session Laws of 1949, sections 54–1009 to 54–1018, inclusive A.C.A.1939, Cum.Supp. 1952. She was about to complete her third year as such teacher and if her contract had been renewed by defendant for the school year 1952–53 at the end of the year she would have been entitled to certification as a "continuing teacher" and classified as such thereafter.

Under the provisions of this act contracts for both probationary and continuing teachers are automatically renewed at the end of each school year unless on or before March 15 of each year notice is given such teachers that their contracts will be terminated at the end of the current school year or that they are dismissed. In February, 1952, plaintiff received oral notice that her contract would be terminated at the end of the current school year. At that time she was told by the superintendent of the school, in substance, that her discipline in the study hall was not satisfactory. Thereafter on March 14 she received a written notice bearing date March 13, reading as follows:

"This letter is to officially notify you that at a recent meeting of the Board of Education of the Tempe Union High School, it was decided that your contract would not be renewed for the 1952–53 school year.

"Sincerely yours
"F. J. Benedict, Principal."

Plaintiff thereupon began negotiations with the superintendent and board of education relating to her re-employment but to no avail and on the following June 25 she filed an action of mandamus against defendant to compel the board to renew her contract upon the alleged ground that the written notice to her purporting to terminate her employment as a teacher did not "incorporate therein" the reasons for terminating the same as required by the statute and not having received a legal notice thereof, her contract under the provisions of the act was automatically renewed and petitioned the court for the issuance of an alternative writ of mandamus compelling the renewal of said contract or to show cause why a peremptory writ should not issue.

A hearing was had on a return to the alternative writ and the court entered judgment ordering the issuance of a peremptory writ directing plaintiff's re-employment as

such teacher for the year 1952–53, and that she be given a written contract of employment for that year. It is from this judgment and the order denying motions for a new trial that defendant has appealed.

It has assigned a number of errors which present four primary questions to this court for its determination:

1. Does the law require a written notice of termination of their contracts or of their dismissal to be given to probationary teachers?

2. Must such notice state the reason for the dismissal or for termination of their contracts?

3. Is mandamus a proper remedy?

4. Is plaintiff guilty of laches in waiting until June 25 to file her complaint in this case?

The first three questions are so interrelated that an affirmative or negative answer to question No. 1 compels a like answer to questions 2 and 3. The answers to the above questions must be found in the language of the act, the pertinent portions of which are contained in sections 54–1010, 54–1011, 54–1012, 54–1013 and 54–1017, supra:

"54–1010. *Notice to teachers.*—Subject to the provisions of section 7 (§ 54–1015) of this act, the contract of employment of any probationary teacher or continuing teacher for any school year commencing after June 30, 1950, shall be deemed automatically renewed for the next ensuing school year, unless, on or before the 15th day of March immediately preceding such ensuing school year, the school board, a member thereof acting on behalf of such board, or the superintendent of the school district, gives notice to such teacher of termination thereof.

"54–1011. *Dismissal of continuing teacher.*—No continuing teacher shall be dismissed or his contract of employment terminated unless written notice specifying the cause or causes therefor is first given to such teacher by the school board, a member thereof acting on behalf of such board, or the superintendent.

"54–1012. *Hearing.*—Within fifteen (15) days after receipt of notice of dismissal or termination, a continuing teacher may serve upon a member of the school board, or upon the superintendent, a written request for either a public or private hearing before said board, which hearing must be held by the school board not less than ten (10) days nor more than fifteen (15) days after such request is served, and notice of the time and place for the hearing shall be given such teacher not less than three (3) days prior to the date of hearing. At such hearing the teacher shall have the right to appear in person and by counsel, if desired, and to present any testimony, evidence or statements, either oral or in writing, in his behalf. Within ten (10) days following such hearing the board shall determine whether there existed good and just cause for such notice of dismissal, which cause shall not include religious or

political beliefs or affiliations unless in violation of the oath of such teacher, and shall render its decision accordingly, either affirming or withdrawing the notice of dismissal or termination.

"54–1013.  *Appeal.*—The decision of the board shall be final in the matter unless the teacher aggrieved, within 10 days after the date of the decision, files an appeal with the superior court of the county within which he or she was employed.  In such appeal, the court shall hear and determine the matter de novo, not less than 20 or more than 40 days after the date of filing of the appeal.  Pending determination of the appeal, the decision of the board shall remain in full force and effect, and may not be superseded.

\*      \*      \*      \*      \*      \*

"54–1017.  *Probationary teachers.*—The provisions of sections 3 and 4 (§§ 10–1011, 10–1*1*12, [ meaning sections 54–1011 and 54–1012]) of this act shall not be applicable to probationary teachers, but the school board or superintendent shall, in cases where notice of dismissal or termination is given, incorporate in such notice a statement of the reasons therefor."

Let us look at the language used in the act by the lawmakers.  It is not as well drawn as it might have been but considered as a whole, it is not ambiguous.  Section 54–1010 which provides for the giving of the notice here under consideration applies to both "continuing teachers" and to "probationary teachers".  It is silent as to whether such notice shall be in writing. · Section 54–1011 provides that no continuing teacher shall be dismissed or his contract of employment terminated unless written notice specifying the cause or causes therefor is first given to such teacher by the school board, a member thereof acting on behalf of the board, or the superintendent.

Section 54–1012 provides that within the time specified therein after receipt of the notice of dismissal or termination of his contract, a continuing teacher may serve upon a member of the school board or upon the superintendent a written request for either a public or private hearing which must be held not less than ten days nor more than 15 days after such request is served and notice of the time and place of hearing must be given the teacher by the board not less than three days before the hearing.  The teacher is given the right to appear in person and by counsel and present evidence, oral or written, in his behalf.  The board must determine whether there exists good cause for dismissal within 10 days after the hearing.  Section 54–1013 provides that the decision of the board shall be final unless the teacher aggrieved, within 10 days after the decision, files an appeal with the superior court of the county within which he is employed.

Sections 54–1011 and 54–1012 indicate to us a legislative intent to do two things: (1) to provide a written record in the case of a dismissal of a continuing teacher upon which such teacher may base

an appeal to the superior court for review as provided for in section 54–1013, supra; (2) to deny to probationary teachers the right to a hearing before the educational board or access to the courts upon dismissal or termination of their contracts. These two sections set up in detail ·the record which must be made in writing, the time within which the parties must act, and the procedure to be followed in order to protect the rights of both parties in order to lay a predicate for a final determination of the matter in the courts.

■ It will be observed that section 54–1017, supra, relating to probationary teachers provides that the provisions of sections 3 and 4, sections 54–1011 and 54–1012, supra, of the act "shall not be applicable to probationary teachers" and continues as follows:

" * * * but the school board or superintendent shall, in cases where notice of dismissal or termination is given, *incorporate in such notice a statement of the reasons therefor.*" (Emphasis supplied.)

The fact that the legislature excluded both sections 54–1011 and 54–1012 from the operation of section 54–1017 compels the conclusion above reached that the legislative intent was to provide for a hearing and appeal to the courts upon dismissal of a continuing teacher and to deny such right to a probationary teacher. In other words, by including both sections it is clear that the legislature intended that the two sections were to be considered together and that the procedure therein set up was not available to a probationary teacher. Had section 54–1017 excluded only section 54–1011, supra, from its operation, requiring written notice to be given, as counsel for defendant in his brief would have us believe, and had section 54–1017, supra, stopped there then counsel's argument would have merit but when that section excludes from its operation both sections setting up the entire procedure to be followed by a continuing teacher and proceeds to provide that where notice of dismissal or termination of a probationary teacher's contract is given there shall be *incorporated therein* a statement of the reason therefor, the contention that an oral notice is all that the law requires is completely refuted. Incorporated, according to Webster's New International Dictionary, means

"to unite in, so as to form one body, to unite with another body so as to make a part of it; to give a material form to, to embody."

There must be a corpus before anything can be incorporated into it. An oral notice is intangible and remains so until reduced to writing at which time it becomes a tangible corpus and then, and only then, can a statement be incorporated into it. We agree with the learned trial judge that the above language is susceptible of no other meaning than that the notice of dismissal of a probationary teacher under the clear language of section 54–1017, supra, must be in writing.

The board itself did not consider an oral notice of termination of the contract of a probationary teacher as an official notice of dismissal. The superintendent so testified. The written notice stated that:

"This letter is to officially notify you that at a recent meeting of the Board of Education * * * it was decided that your contract would not be renewed. * * *." Section 54–1017, supra, commands that the reasons for dismissal or termination of contract shall be incorporated in said notice. It follows necessarily that the official notice of termination of contract being in writing, the reasons for such dismissal must be incorporated therein.

▮ Statutes of this character creating a special procedure for the protection of personal rights must be strictly followed and the failure of either party to comply therewith loses whatever rights the law was intended to protect. Fresno City High School District v. De Caristo, 33 Cal.App.2d 666, 92 P.2d 668.

The case of Reed v. Board of Education of Monterey Union High School District, 125 Cal.App. 714, 14 P.2d 330, is very similar to the case at bar in so far as the facts are concerned and the principle involved is analogous to the instant case although the California statute is different from ours. Reed was employed as a probationary teacher in the Monterey High School District in 1931. The California statute, School Code, sections 5.681, 5.682, at that time provided that:

"'On or before the tenth day of June in any year the governing board may give notice in writing to a probationary employee that his services will not be required for the ensuing year.' 'Such notice shall be deemed sufficient and complete when delivered in person to such employee by the clerk * * * or deposited in the United States registered mail with postage prepaid, addressed to such employee at his last known place of address.' "
The court said:

"When such notice is not given as required by the statute, the teacher is 'deemed reelected from year to year'. (School Code, § 5.401.)"

The statute is substantially the same today. Reed had numerous conversations with the superintendent of schools and with the principal of the high school prior to June 10th in which she was informed that the board appeared unfavorable to re-electing her for the ensuing term. The superintendent suggested she resign which she refused to do. On June 6 the board of education passed a resolution purporting to declare her position vacant. A copy of the resolution was mailed to her at her address and received by her on June 15. She brought an action in mandamus to compel the board to renew her contract upon the ground that the notice required by statute was inadequate. The court said:

" * * * No written notice was personally delivered to the respondent nor addressed to her through the registered mail.

As the notice must be in writing all the evidence of oral conversations with the superintendent and others is beyond the issues. Whether written notice was in fact received by the respondent prior to June 10th was a clear question of fact which the trial court determined adversely to appellants.

"* * * Two things must concur: The notice must be in writing and must be delivered to the teacher or deposited in the registered mail prior to June 10th. Failure in either respect is an insufficient notice under the statute which automatically reelects the teacher for the ensuing year. * * *"

Blalock v. Ridgway, 92 Cal.App. 132, 267 P. 713, 714, is another California case wherein the facts are similar to the fact situation in the instant case. The teacher in this case had been informed by the superintendent as early as May 25 that on the previous May 23 the board held a meeting and resolved not to employ her for the following year. She circulated petitions to the parents of the pupils in the school upon suggestion of a board member in which the board was petitioned to re-employ her. On June 8 the board, nevertheless, mailed an unregistered written notice to her address at Porterville, California, where she resided. This notice was received by her on June 16. Later on June 23 a registered letter was deposited in the mail directed to her at the same address notifying her to the same effect. The court said:

"The primary rule of statutory construction to which all others must yield is to determine the intent of the Legislature (citing cases). When this intent is ascertained, it will not be departed from if it is reasonably possible to avoid it.

\* \* \* \* \* \*

"* * * With this intent before us, having in mind that the statute provides that each teacher employed for one year shall be deemed reemployed, except discharged for cause after hearing, or in the case of a probationary teacher, by serving her with a notice in writing on or before June 10th, we conclude that the intent and meaning of the law is as though it read: Permanent teachers cannot be discharged except for good cause after hearing, and probationary teachers cannot be discharged except for good cause after hearing, or by serving them with a written notice on or before June 10th, that their services will not be required for the ensuing year. Service of the written notice shall be made personally or by mailing—and if by mail, shall be complete only when deposited in the mail provided it is registered. It must be apparent that, except for good cause, the board of trustees could not discharge a probationary teacher on April 1st, let us say, so as to dispense with her services for the remainder of that school year. It must be equally clear that on June 11th they could not dispense with her services except for good cause, for the very obvious reason that the law, operating upon their

inaction, has brought into being on that day a new contract for the ensuing year which is just as obligatory upon the board as the one which existed on April 1st. It would follow in logical sequence that the Legislature declared its intention to fix the 10th day of June as the dead line—to make the giving of a written notice before that time the essence of the thing to be done to effectuate the discharge. In such cases the requirements of the statute must be held to be mandatory and not merely directory. * * * Another manner of phrasing the effect of the statute is to say that the Legislature has defined the limits of the power or jurisdiction of the board of trustees to discharge a probationary teacher and this constrains us to declare that its provisions are mandatory. (Citing cases.)" To the same effect is Comstock v. Board of Trustees, etc., 35 Cal.App.2d 466, 95 P.2d 969, and others.

We therefore hold (1) that the notice to a probationary teacher of her dismissal or of the termination of her contract must be in writing; (2) that it must have incorporated therein a statement of the reasons therefor; (3) that because the written notice given plaintiff did not have incorporated therein the reason for terminating her contract as required by law, such notice was void and did not have the effect of terminating said contract. It was in law no notice at all. Not having complied with the statute relating to notice of termination of plaintiff's contract requiring a statement of the reason therefor to be incorporated therein, her contract was automatically renewed on March 15, 1952, by operation of law. The board had exhausted its discretion. There remained only the ministerial act of reducing to writing her contract of employment for the ensuing year. Mandamus under such circumstances was the proper remedy under the law. We have so frequently sustained that position that a citation of authority is unnecessary.

We do not agree with defendant's contention that plaintiff is guilty of laches in waiting a little over three months to bring her action against defendant. Attempts were being made during a good portion of this time to settle the matter out of court which ultimately failed.

Judgment affirmed.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concurring.