419 P.2d 52

**Claire A. JOHNSON, Appellant,**

v.

**BOARD OF EDUCATION et al., Appellees.**

**No. 7932.**

Supreme Court of Arizona, In Division.

Oct. 19, 1966.

Lewis, Roca, Scoville, Beauchamp & Linton, by John J. Flynn and Jeremy E. Butler, Phoenix, for appellant.

Charles N. Ronan, County Atty., Nicholas Udall, Special Deputy for Maricopa County, for appellees.

McFARLAND, Justice:

Claire A. Johnson, hereinafter referred to as plaintiff, brought a claim for breach of contract and tort against the Board of Education for the Phoenix High School District and the members thereof, hereinafter referred to as defendants. From a directed verdict for defendants, plaintiff appeals.

In the fall of 1959 plaintiff began his third academic year as a probationary teacher in the Phoenix Union High School System. By the terms of his contract of employment with the Phoenix Union High School and Phoenix College System, he was to teach until June 3, 1960. The contract reads in part as follows:

"That School District through its Board agrees to employ Employee, and Employee hereby agrees to be employed as teacher in the system of School District, and to perform the usual duties of such position and such reasonable extracurricular duties in connection with such employment as Board, or as Board through its Superintendent, may assign to Employee for the period beginning the 31st day of August, 1959, and to terminate on the 3rd day of June, 1960. Employee agrees to perform well and faithfully the duties hereby required in accordance with law and the rules and regulations adopted by Board for the government of School District.

* * * * * *

"In consideration of the services rendered in accordance herewith, School District agrees to pay Employee the sum of five thousand five hundred eighty and no/100 * * * Dollars ($5,580.00) for the period of this contract as above set forth, and in addition thereto compensation for such additional assignments as may be re-

quired by the Board of Education in accordance with the schedule for extra assignment compensation."

On the morning of November 1, 1959, plaintiff and one John Mosely were arrested by Phoenix city police officers and charged with being drunk and disorderly and committing lewd and lascivious acts. Plaintiff stated he and Mosely were going out for a drink and while driving by the M & H Tavern near 18th Street and Van Buren they noticed several people dressed in Halloween costumes entering the tavern. Plaintiff and Mosely parked nearby and entered the tavern. Plaintiff testified that at 1:00 a. m. he and Mosely left the tavern and went to plaintiff's car. When they arrived at the car Mosely asked plaintiff if he might discuss a personal problem of his with plaintiff. They had been talking for a short time when the arresting officers shined their flashlights in the car window, opened the doors and took plaintiff and Mosely to jail where charges were made.

Plaintiff testified he was booked and placed in the "drunk tank" and the next morning he plead guilty to the drunk and disorderly charge and not guilty to lewd and lascivious acts. Sometime previous to November 6, 1959, plaintiff withdrew his plea of guilty and plead not guilty to the drunk and disorderly charge.

A school board hearing was scheduled for November 19, 1959. Plaintiff asked the principal of Phoenix Union High School and the personnel manager of the system if he might appear and explain his side of the case. His request was denied, and he testified that because of this unconditional denial he did not bother to file a written request. Two other witnesses, who represented the American Federation of Teachers, went to the hearing. A request by one of these witnesses to speak in behalf of plaintiff was denied by the Board.

Sometime after November 19, 1959, plaintiff received a letter dated November 19, 1959, which informed him that pursuant to A.R.S. § 15–259 his contract was terminated

as of November 9, 1959. A portion of the letter which merits quoting follows:

"* * * This is due to your conduct that is inconsistent with professional standards of conduct required of persons in positions of leadership of students in the Phoenix Union High Schools and Phoenix College System, more specifically that of drunkenness, disorderliness, and indecent acts committed on or about November 1, 1959."

On June 29, 1960, plaintiff sent a letter to defendants informing them that Judge Pensinger, on June 14, 1960, after talking to plaintiff and the arresting officers, had not found him guilty of either of the charges against him. Plaintiff's letter asked defendants what they planned to do in light of this new development, for he in fact was not guilty of the charges stated in their letter dated November 19, 1959, and if they did nothing he would be forced to bring an action for relief. No action was taken and plaintiff brought suit for defendants' breach of contract and tort damages. At the close of all the evidence, counsel argued defendants' motion for directed verdict. After taking the matter under advisement, the trial court granted a directed verdict for the Board and all defendants.

Plaintiff maintains some five assignments of error, four of which will be considered together. Their substance is that the trial court committed error when it granted a directed verdict because the issue of whether or not defendants' action was proper should have gone to the jury.

In this breach of contract action plaintiff's position is that he was improperly discharged and is entitled to damages based upon his contractural salary for the remaining period of the contract. Defendants' position is that they are not liable for their breach of contract because plaintiff was the first to breach the contract by his conduct on November 1, 1959. This portion of the contract reads as follows:

"* * * Employee agrees to perform well and faithfully the duties hereby required in accordance with law and the rules and regulations adopted by Board for the government of School District." [Emphasis added]

Defendants' position is that plaintiff did not "well and faithfully" perform his contract on November 1, 1959, and for this reason their cancellation of his contract does not entitle plaintiff to any redress. Therefore, the issue of whether or not defendants are liable to plaintiff in damages for their breach of his contract depends on whether or not they were justified in cancelling his contract. Defendants contend that A.R.S. § 15–254 only allows a hearing for the dismissal or termination of continuing teachers, and A.R.S. § 15–255 allows an appeal from this hearing. Defendants also contend that A.R.S. § 15–254 and § 15–255 do not apply to probationary teachers. A.R.S. § 15–259.

To determine whether or not these statutes preclude plaintiff from bringing a breach of contract action, we look to the intent of the legislature. A.R.S. § 15–251 defines a continuing teacher as one whose contract has been renewed for its fourth consecutive year. This same statute gives the same definition of probationary teacher with the exception that there is nothing stated about his contract being renewed for the fourth consecutive year. In accord with this distinction, it has been held that the difference between a probationary and a continuing teacher is that a probationary teacher is one whose tenure is not yet into its fourth consecutive annual contract. Tempe Union High School District v. Hopkins, 76 Ariz. 228, 262 P.2d 387. A.R.S. § 15–252 provides that if a teacher is not given notice of the employer's intention not to renew his contract for the following school year by March 15, then the contract is automatically renewed for the following school year. This provision specifically applies to both probationary and continuing teachers. A.R.S. § 15–254 and A.R.S. § 15–255 specifically provide for a hearing and an appeal from such a hearing for continuing teachers.

In Public School District No. 11 v. Holson, 31 Ariz. 291, 252 P. 509, and in Anthony v. Phoenix Union High School District, 55 Ariz. 265, 100 P.2d 988, this court held that before a teacher's contract could be cancelled for cause he is entitled to a hearing to present his position. In the instant case Plaintiff was not permitted to attend the hearing and those who were there in his behalf were not allowed to present his position.

Defendants moved for a directed verdict based upon two grounds—(1) that the teacher tenure statutes deny a probationary teacher the right to a hearing and access to the courts when his contract is cancelled,—and (2) the mere filing of the criminal charges against plaintiff, whether true or untrue, was good cause for the cancellation. In the instant case plaintiff was discharged after defendants were informed that he had been charged with being drunk and disorderly, to which he plead guilty, and charged with lewd and lascivious acts, to which he plead innocent. Based on the knowledge of the two charges, defendants gave plaintiff notice of his dismissal as of November 9, 1959. Plaintiff sought admission to the hearing at which his situation was being discussed, but was denied the right to be present, and a representative of his was denied the right to speak.

■ There is nothing in the statutes which even infers an intent by the legislature to deprive a probationary teacher of access to the courts to sue for a breach of a contract under which he is currently performing. The purpose of the teachers' tenure act is to give teachers sufficient notice if they are not to be rehired so they can seek other suitable positions, and to provide those teachers with sufficient tenure (continuing teachers) a right to a hearing, and an appeal therefrom if, in fact, they are properly notified that their contract is not to be renewed. The state of the law is that if a continuing teacher is properly informed by the requisite date that his contract is not going to be re-

newed for the subsequent school year, he may have a hearing (A.R.S. § 15–254) and subsequent appeal therefrom (A.R.S. § 15–255), while a probationary teacher is not entitled to such a hearing or appeal when he receives proper notice of the Board's intention not to hire him for the subsequent year. This is the sole meaning of the statutes cited and the only distinction between the rights of a continuing and probationary teacher.

■ In the case of Tempe Union High School District v. Hopkins, supra, this court relied heavily on the case of Blalock v. Ridgway, 92 Cal.App. 132, 267 P. 713, to assist it in statutory construction. The California court, in construing their own teachers' tenure act which is quite similar to ours, said:

"* * * Permanent teachers cannot be discharged except for good cause after hearing, and probationary teachers cannot be discharged except for good cause after hearing, or by serving them with a written notice on or before June 10th, that their services will not be required for the ensuing year. Service of the written notice shall be made personally or by mailing—and if by mail, shall be complete only when deposited in the mail, provided it is registered. It must be apparent that, except for good cause, the board of trustees could not discharge a probationary teacher on April 1st, let us say, so as to dispense with her services for the remainder of that school year. * * *" 92 Cal.App. at 136, 267 P. at 714.

It is quite obvious that the language of the California case which this court has adopted as a proper statement of law stands for the proposition that under the teachers' tenure act, a continuing teacher is always entitled to a hearing and the Board must have good cause for either its failure to renew, or its dismissal, under a current contract of a continuing teacher. The situation is different with probationary teachers. In their case, if their contract is not to be renewed, only the proper notice is required,

and the Board need not show "good cause", but if they are discharged from a currently operative contract they "cannot be discharged except for good cause after hearing."

■■ The wording of the teachers' tenure act (A.R.S. §§ 15–251 to 15–260) could be better, but the intent is clear. This act was passed to increase the rights of teachers who have acquired the status of "continuing teachers" in that they are entitled to a hearing and an appeal if their contract is not renewed. There is no intent by the legislature to deprive teachers of any rights which existed previous to this enactment. Therefore, in accord with Public High School District No. 11 v. Holson, supra, and Anthony v. Phoenix Union High School District, supra, we hold that when a teacher's probationary or continuing contract is to be cancelled he is entitled to present his position at a hearing held for this purpose, and plaintiff was improperly denied this opportunity in the instant case.

We next come to the question of what, if any, prescribed procedure must be granted to protect a teacher if he is discharged from a contract under which he was currently performing. In Anthony v. Phoenix Union High School District, supra, this court said:

"* * * That he must be advised of the charge against him and given an opportunity to refute or explain such charge we think is imperative. However, the procedure for such hearing, none being prescribed by the statute, is such as the board may adopt. * * *" 55 Ariz. at 269, 100 P.2d at 990.

Defendants cite Anthony v. Phoenix Union High School District, supra, to support two points which must be considered at this time: (1) plaintiff's contract was cancelled and the court held that the Board's decision will be upheld absent any showing of unreasonable, arbitrary or capricious conduct on its part, and (2) that the mere bringing of criminal charges was sufficient cause to uphold the Board's cancellation of the contract.

In the Anthony case, the situation is quite different from the instant case, for the plaintiff was given notice of a hearing at which he failed to appear. The Board took evidence at this hearing on which it based its decision. The plaintiff in that case admitted his guilt of the criminal acts with which he had been charged. Based on these facts, this court held that *there was sufficient cause* to cancel his contract, and the Board's decision would not be set aside absent a showing that it had acted arbitrarily, unreasonably, or capriciously. In the instant case plaintiff was denied the right to appear at the hearing; there is nothing in the record to show that evidence was taken at the hearing, and most importantly, plaintiff denies his guilt of the crimes charged, and the evidence shows that the magistrate dismissed the charges. Thus, in Anthony v. Phoenix Union High School District, supra, this court held that as a matter of law there was cause for cancelling plaintiff's contract inasmuch as he had admitted the crimes and didn't appear at his hearing, but that certainly cannot be the holding under the facts of the instant case.

Defendants also cite the following portion of Anthony v. Phoenix Union High School District, supra:

"Plaintiff, we think, admits the different arrests and that he was sued by his wife for divorce but contends that neither killing wild game out of season nor family troubles is any evidence of unfitness to teach. Certainly such publicity concerning a teacher of youth is not desirable, whether true or untrue. It could not help leaving in the minds of those patrons of the school who read or heard about it unfavorable impressions. * * *" 55 Ariz. at 271, 100 P.2d at 991.

Defendants maintain that this quote stands for the proposition that merely being charged with a crime is sufficient cause for cancellation of a contract. We cannot accept this interpretation. The language means exactly what it says, which in substance is that the publicity concerning a

teacher being charged with a crime is not desirable, whether or not the teacher is guilty of the crime. It is also apparent to this court that defendants themselves, in the instant case, did not think merely being charged with a crime was necessarily good cause for cancelling a currently operative contract. In their letter to plaintiff dated November 19, 1959, they stated that his contract was terminated because *he had been* drunk, disorderly, and had committed indecent acts, rather than stating that his dismissal was based on the fact that he had been charged with these crimes. Nowhere in the Anthony case does the court ever state, or even infer, that merely being charged with a crime is, as a matter of law, good cause for dismissal. As to the balance of the Anthony case, anything found therein which is inconsistent with our opinion in the instant case is hereby overruled.

The instant case arises from a termination under a currently existing contract and the Superior Court certainly had jurisdiction to determine whether or not the Board had "good cause" to dismiss plaintiff. Before a directed verdict can properly be granted, the evidence must be construed so the moving party admits the truth of whatever competent evidence the opposing party introduced, including reasonable inferences to be drawn therefrom. Only where the evidence is insufficient to support a verdict, or so weak, that upon a motion for a new trial after the verdict the court would feel constrained to set it aside, is the court justified in directing a verdict. Barker et ux v. General Petroleum Corporation, et al., 72 Ariz. 187, 232 P.2d 390; Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803; Lazear v. Pendergrass, 39 Ariz. 111, 4 P.2d 386; Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A.L.R. 881. We cannot say as a matter of law that the evidence construed most favorable to plaintiff as to the issue of "good cause" is insufficient to support a verdict in his favor, or that the court would feel constrained on a motion for a new trial

to set aside a verdict for the plaintiff. For this reason, and because it appears that the trial court granted the directed verdict because it felt there was a lack of jurisdiction, the directed verdict must be set aside.

We are faced with the question of what constitutes "good cause" when the whole record shows that plaintiff had a reputation for excellent character and morals, and the only blot on this record is a charge of being drunk and disorderly and of committing lewd and lascivious acts, especially when both charges were later dismissed by the magistrate. This court has held that the decision of the Board *not to renew* the contract of a probationary teacher will not be disturbed unless the Board has abused its discretion by acting arbitrarily, unreasonably, or capriciously. Chesley v. Jones, 81 Ariz. 1, 299 P.2d 179. This is the law in this jurisdiction, but in cases where a continuing teacher has been terminated or dismissed, or where a probationary teacher was discharged from a contract under which he was currently performing, the test of the propriety of the Board's action is whether or not there was "good cause" for such action. Kersey v. Maine Consolidated School District No. 10, 96 Ariz. 266, 394 P.2d 201; Tempe Union High School District v. Hopkins, supra. The issue of good cause is one for the jury, especially in light of the fact plaintiff had no hearing.

Plaintiff assigns as error the granting of defendants' motion for a directed verdict on the second cause of action which was based on the allegation that " * * * defendants maliciously made, uttered and published false and defamatory statements concerning the plaintiff * * * " and that the said statements were made by defendants to third persons for the purpose of bringing into disrepute and ridicule the honesty, integrity, sobriety, morality and general reputation of plaintiff. Defendants contend that " * * * The affirmative act of discharging an employee is uniformly considered to be *no more than alleged nonper-*

*formance of the agreement* to continue employment, thus precluding tort liability in such case. \* \* \*" The allegations in the second cause of action make no reference to a nonperformance of a contract, and as far as the allegations are concerned, they are independent and separate from the acts of the discharge of plaintiff. However, the evidence falls short of being sufficient to submit the question to the jury under the second cause of action and the trial court did not err in granting defendants a directed verdict on this cause of action.

Case reversed and remanded for further proceedings not inconsistent with this opinion.

STRUCKMEYER, C. J., and BERNSTEIN, V. C. J., concur.