Time, Incorporated, Plaintiff-Appellant, *v.* The Department of Revenue *et al.,* Defendants-Appellees.

(No. 57214;

First District (5th Division)—March 16, 1973.

Price, Cushman, Keck & Mahin, of Chicago, (Robert S. Cushman and Richard J. Raskin, of counsel,) for appellant.

William J. Scott, Attorney General, of Chicago, (Warren K. Smoot and Paul J. Bargiel, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This is an appeal by plaintiff, hereinafter Time, from a judgment on administrative review entered in the circuit court in favor of defendants, upholding a determination by the Department of Revenue that plaintiff owed $98,997.26 for Illinois use taxes, including statutory penalties and interest.

The use tax was levied on the purchase price of paper products manufactured out of State and shipped by common carrier to Time in Illinois. The finished unprinted paper was temporarily stored in Time's Chicago warehouses, then cut to letter size, cut or formed into envelopes and subscription order forms, and then printed to make complete letters, envelopes and subscription order forms. The completed envelopes, letters, forms and return envelopes were than sent to Chicago letter shops where they were "stuffed" into the mailing envelopes and sent by mail to persons outside Illinois. (The use tax on paper used to mail the same letter, forms, etc., to residents of Illinois was paid in full and is not at issue in this case.)

The letters were used for solicitation purposes, notifying subscribers that their subscriptions were about to expire, mentioning reasons why they should continue receiving the magazines, and asking them to mail back the enclosed order form at once in the envelope furnished for that purpose.

On February 11, 1971, a hearing was held on plaintiff's protest of tax liability. The hearing officer found that the use, *i.e.*, cutting, printing and folding, of promotional paper occurred entirely within Illinois and thus constituted a taxable use under Illinois law. Further, he found that the use and conversion of the paper into advertising material and its mailing completely removed Time from the temporary storage exemption of the statute. On February 28, 1972, following a hearing on administrative review by the circuit court, an order was entered by that court incorporating the opinion of the hearing officer into a final judgment in favor of the Department of Revenue. From that judgment plaintiff has appealed.

*OPINION*

Time concedes that its processing of the paper in question constituted a use within the meaning of the Use Tax Act but not a taxable use. It contends (1) that the plain language of one of the provisions of the Act exempts the transaction in this case from taxation, and (2) that the trial court's decision renders Illinois printers and manufacturers non-competitive with those in other major industrial states.

■■ The Use Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 439.2), enacted as a complement to the Retailer's Occupation Tax Act "to prevent evasion of the tax that applies when retail purchases are made within the State, and to protect the local retail merchant against diversion of his business to out-of-State sellers" (*Turner v. Wright*, 11 Ill.2d 161, 142 N.E.2d 84), defines "use" as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property \* \* \*." Section 439.3 of the Act, relied on by Time, exempts certain property stored temporarily in Illinois after being brought from outside the State, and provides in its pertinent parts:

> "To prevent actual or likely multistate taxation, the tax herein imposed does not apply to the use of tangible personal property in this State under the following circumstances:
>
> \* \* \*
>
> (d) the temporary storage, in this State, of tangible personal property which is acquired outside this State and which, subsequent to being brought into this State and stored here temporarily, is used solely outside this State or physically attached to or incorporated into other tangible personal property that is used solely outside this State." Ill. Rev. Stat. 1969, ch. 120, par. 439.3.

■■ Time contends that the trial court misapplied the statute by reasoning, on the basis of the section's prefatory language, that before a taxpayer can take advantage of the exemptions set forth in Section 439.3 quoted above, he must show that his case, if not exempted, "invokes or is likely to invoke multistate taxation." We agree with Time that such a

showing is not necessary and that the only requirement is for the tax-payer to establish that he meets the standards set forth in any one of the exclusions (in this case, those of paragraph (d)), and he does not assume the burden of demonstrating that multistate taxation will result if the exclusion is not granted. We take the phrase, "To prevent actual or likely multistate taxation \* \* \*" to be a statement expressing the statutory purpose in the granting of exclusions and not one imposing a burden of proof upon a taxpayer who would, without such proof, come within one of the four specific exclusions.

Time's argument concerning Section 439.3(d) is a very narrow one. The paragraph relates to two separate factual situations. The first is the broad exclusion of property temporarily stored in this State which is then "used solely outside this State." Time makes no claim under this language since, as mentioned above, it concedes that the paper was used by it in Illinois through the processing into letters, envelopes, etc. It does argue, however, that its transaction is exempt from taxation because the blank stock paper was "incorporated into other tangible personal prop-erty" (envelopes, letters and order forms) which were then "used solely outside this State" by recipients out of state. More specifically, it is claimed that once the paper was printed and mailed, the "use" of the paper occurred solely outside the State when recipients of the letters opened and read them, decided whether to continue the subscription, and mailed the return envelope after filling out the form, or simply dis-posed of the letter and the requested subscription form.

To reach this conclusion, Time must, and does, contend that the un-finished paper was "incorporated into" the letters, forms and envelopes. In support of this contention, Time cites three cases from other jurisdic-tions which it relies upon to support its interpretation of the meaning of the word "incorporated." These cases are *Diamond Oil Well Drilling Co. v. Purser*, 256 S.W.2d 421 (Tex. Civ. App. 1953); *Tempe Union High School Dist. v. Hopkins*, 76 Ariz. 228, 262 P.2d 387; and *Comptroller v. American Cyanamid Co.*, 240 Md. 491, 214 A.2d 596.

*Diamond Oil Well Drilling Co. v. Purser*, 256 S.W.2d 421 (Tex. Civ. App. 1953), was a personal injury action where the court held that plain-tiff's affidavit controverting defendant's plea was sufficient because plain-tiff's first amended petition was incorporated into the affidavit. We can-not disagree with that result since there were two documents which were incorporated into one, *i.e.*, the affidavit became a part of plaintiff's original petition. It was not, as in the present case, the processing of one product into another form.

*Tempe Union High School Dist. v. Hopkins*, 76 Ariz. 228, 262 P.2d 387, was a *mandamus* action against the school district to compel the

board to renew a teacher's contract. The court held that a written dismissal notice not incorporating reasons for dismissal was void. However, immediately following the dictionary quotation in the case, which was quoted and relied upon in Time's brief, the court stated as its conclusion: "There must be a corpus before anything can be incorporated into it."

In *Comptroller v. American Cyanamid Co.*, 240 Md. 491, 214 A.2d 596, the court upheld the imposition of sales tax on a manufacturer of adhesives which used honeycomb cores and aluminum panels to test its adhesive product. The court held that the cores and panels were not used or incorporated into other tangible personal property which was then sold by the defendant, but were used for testing purposes only, and upon conclusion of the testing procedure were good only for scrap.

We consider all three of these cases to be basically distinguishable from the statutory interpretation Time would have us adopt.

Webster's Third New International Dictionary, at page 1145, defines "incorporate" as "to unite with or introduce into something already existent * * *." If this general meaning is accepted, as it was by the trial court, it is obviously too restricted to encompass the change which has occurred to the paper in this case, since it implies that a separate product must already exist at the time when the processed paper is united with or introduced into it. In the instant case, however, it was only the stock paper which existed at the time of the alleged incorporation, and the same product was merely processed into another form and not joined in any way with "other tangible personal property."

Other states have anticipated this problem by providing similar exemptions from taxation when tangible personal property is processed, fabricated, manufactured or printed, as well as incorporated into or attached to other property already existing.

As an example, the California statute (Cal. Rev. & Tax Code, Sec. 6009.1), excludes from use tax under similar circumstances property which is *"processed, fabricated, or manufactured into, attached to or incorporated into, other tangible personal property* to be transported outside the state and thereafter used solely outside the state." (Emphasis added.)

The Massachusetts statute (Mass. Gen. Laws Ann., ch. 641, sec. 1 (1971) reads:

> " 'Store' and 'storage', and 'use' shall not include the keeping, retaining, or exercising any right or power over tangible personal property for the purpose of subsequently transporting it outside the commonwealth for use thereafter solely outside the commonwealth or for the purpose of being *processed, fabricated or manu-*

*factured into other tangible personal property* to be transported outside the commonwealth and thereafter used solely outside the commonwealth." (Emphasis added.)

Quite similar words are included in the Connecticut statute:

"'Storage' and 'use' do not include keeping, retaining or exercising any right or power over tangible personal property shipped or brought into this state for the purpose of subsequently transporting it outside the state for use thereafter solely outside the state, or for the purpose of being *processed, fabricated or manufactured into, attached to or incorporated into, other tangible personal property* to be transported outside the state and thereafter used solely outside the state." (Emphasis added.) Conn. Gen. Stat. Ann. Sec. 12—407(6) (1972).

And this question probably would not have arisen under the New York statute, cited by Time, because of the obvious difference in relationship between the parties concerned. The words employed in stating the exemption are of interest, however, since they specifically cover processes which we believe the Illinois statute does not. Sections 1105(c) (2) and 1115(d) of McKinney's Consolidated Laws of New York provide exemptions from sales tax as follows:

"1105(c) (2) *Producing, fabricating, processing, printing or imprinting tangible personal property, performed for a person who directly or indirectly furnishes the tangible personal property,* not purchased by him for resale, upon which such services are performed. [Emphasis added.]

1115(d) Services otherwise taxable under paragraphs (1), (2), or (3) of subdivision (c) of section eleven hundred five *shall be exempt from tax* under this article *if the tangible property upon which the services were performed is delivered to the purchaser* outside this state for use outside this state." (Emphasis added.)

■■ Although the Illinois statute might logically have included such language in our legislation, without it we cannot infer that the legislature intended "incorporation into other tangible personal property" to cover fabricating, manufacturing, printing, or processing (all being terms covered by the statutory exemptions in the other states referred to). We therefore cannot conclude that our statute was inferentially intended to cover that which was done in the present case.

■■ Next, Time also argues that the use of the paper occurred solely outside Illinois, as required by the clause it relies on in Section 3(d) of the Act. If we were to assume (which we do not), that the paper in question were shown to have been "incorporated into other tangible personal property," the claimed exemption would still not apply unless

it were also shown that the property as thus processed had been "used solely outside this State." We think there has been no such showing.

In *Acme Printing Ink Co. v. Nudelman,* 371 Ill. 217, 20 N.E.2d 277, the court construed the Retailer's Occupation Tax Act which was later supplemented by the Use Tax Act here considered. (*Caterpillar Tractor Co. v. Dept. of Revenue,* 47 Ill.2d 278, 265 N.E.2d 675; *Boye Needle Co. v. Dept. of Revenue,* 45 Ill.2d 484, 259 N.E.2d 278.) The printing ink companies argued that ink sold to printers and lithographers was not used or consumed, but was resold in another form as an integral part of printed matter. The court held that printers and lithographers are users or consumers of the printing ink which they use in the production of their printed materials. Alluding to the case of *Herlihy Mid-Continent Co. v. Nudelman,* 367 Ill. 600, 12 N.E.2d 638, the court stated:

> "Since ink once used in printing, just as cement use in concrete, can never be used again for that purpose, it has been consumed within the meaning of the statute. *Revzan v. Nudelman,* 370 Ill. 180, 18 N.E.2d 219."

In the present case, although letters and envelopes are still paper products, it is apparent that they cannot be returned to their original condition as plain uncut paper without complete reprocessing.

Time cites in its brief the case of *United Air Lines, Inc. v. Mahin,* 49 Ill.2d 45, 273 N.E.2d 585, probable jurisdiction noted in 405 U.S. 986, 92 S.Ct. 1249, but asserts that it does not control this case because it did not deal with the question of incorporating tangible personal property into other tangible personal property. We agree.*

■■ There are, of course, other uses which courts have construed as the "exercise * * * of right or power over tangible personal property" which do not require that the nature of the product be changed. One type is the lessor-lessee cases where a lessor may be taxed for the operation of equipment by an Illinois lessee on the theory that the lessor has exercised powers of ownership by leasing the property to another who has only the right to possession and not the right of ownership. As stated in *William O'Donell, Inc. v. Bowfund Corp.,* 114 Ill.App.2d 107, 252 N.E.2d 53, "The use tax is not a tax which arises out of the use or operation of tangible personal property, but rather it is a tax placed upon the exercise of powers or rights incident to ownership." See *Philco*

---

* Since the briefs were filed in the instant case, the United States Supreme Court has handed down its opinion in *United Air Lines* remanding the cause for further consideration by the Illinois Supreme Court, 41 LW 4378, 3—6—73. In our opinion, however, the result will not be controlling of Time's case no matter how it may ultimately be decided.

*Corp. v. Dept. of Revenue,* 40 Ill. 312, 239 N.E.2d 805, and *Miller Brewing Co. v. Korshak,* 35 Ill.2d 86, 219 N.E.2d 494.

■■ Therefore, mere use without rights of ownership cannot be taxed, but the exercise of power over personal property incident to ownership therefor which converts the product into another form or prepares it for conversion, or which uses the property for the promotion or solicitation of business, is a taxable use in Illinois. In the present case, we agree with the trial court that from the moment temporary storage ended, Time, as it concedes, first made use of the paper within the state by printing and processing it into specified material. Then, however, there followed a second use by Time in the promotion of its business. The second use occurred when the solicitation letters were mailed from Illinois and the return addressed envelopes and subscription cards were returned to Time's Chicago headquarters and processed into subscriptions. Although Time's second use of the paper might be considered as having been briefly interrupted by a use of the material on the part of its recipients, Time's continuing and final exercise of ownership occurred when the return envelopes and cards were received by Time in Chicago and processed into subscriptions. None of the uses to which Time subjected the paper occurred solely outside Illinois. Its use, therefore, cannot be exempt from taxation. And since none of Time's use occurred outside Illinois, we need not consider the collateral point made in the briefs as to whether the out-of-state use required by the statute need be by the same person who temporarily stored the property within the state.

■■ Finally, Time contends that an affirmance of the trial court's ruling will render Illinois printers and manufacturers non-competitive with those in other major industrial states. Numerous statutes from other jurisdictions are cited to demonstrate that this type of use would be exempt from taxation. We have quoted a number of those statutes above. If our interpretation of the Illinois statute renders certain industries in this state non-competitive with those in other areas of the country, it is for the legislature and not the courts to reconsider its position with a view to correction through appropriate legislation. We have no reason to believe that such a proposal in the instant situation would not receive a favorable legislative response.

The judgment of the trial court is affirmed.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.