526 P.2d 408

**INDIAN OASIS SCHOOL DISTRICT NO. 40 AND BOARD OF TRUSTEES OF the Indian Oasis School District No. 40, Appellants,**

v.

**Elio ZAMBRANO and Sol Blackman, Appellees.**

**No. 2 CA–CIV 1571.**

Court of Appeals of Arizona, Division 2.

Sept. 19, 1974.

**202**

Dennis De Concini, Pima County Atty., by Lawrence Ollason, Special Deputy County Atty., Tucson, for appellants.

W. Edward Morgan, Tucson, for appellees.

## OPINION

KRUCKER, Judge.

A judgment for damages in favor of two schoolteachers against appellants is the subject of this appeal. Counsel stipulated that the trial of this case be submitted on the court's file, including depositions. The parties submitted memoranda and filed a stipulation of facts. The court ordered that the Board's action terminating the teachers' employment be set aside. The file reflects that the parties attempted to reach a settlement and were unsuccessful; therefore, a hearing on the question of damages was held at which time both teachers testified and their respective income tax returns and W–2 forms for the years 1970, 1971 and 1972 were admitted into evidence. The court subsequently ordered judgment in favor of Blackman in the sum of $17,349.12 and in favor of Zambrano in the sum of $3,088.31.

We initially reject appellants' argument that the lower court lacked jurisdiction to decide this case because some of the parties were Indians and the school district encompasses the Sells Indian Reservation. They are correct when they say that, absent governing acts of Congress, the question has always been whether the State action infringes on the right of reservation Indians to make their own laws and to be ruled by them. Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). The subject litigation in no way infringes on the rights of reservation Indians to make their own laws and to be ruled by them. Albeit some of the Board members may be Indians, this lawsuit was against them in their capacity as members of the Board and not as individuals. Creation of school districts and their powers is governed by state law; likewise are the powers and duties of the trustees of the school district. It would be anomalous indeed if the trustees on the one hand could exercise authority derived from state statutes and, when such authority is challenged, question the jurisdiction of the state courts.

Appellants contend:

1. That notices given to the appellees effectively terminated their contract for ensuing years and prevented automatic renewal, and

2. That the teachers' dismissal during a contract year was valid.

The trial court ruled otherwise.

A brief summary of the stipulation of facts filed by the parties is as follows. The appellant-Board received information from the school superintendent that gave rise to concern by Board members about certain activities of Mr. Zambrano, a teacher at Indian Oasis High School, in his use of and recording of funds arising from a para-education activity. In accordance with the desires of the Board, the superintendent orally invited Mr. Zambrano to attend a meeting of the Board in the superintendent's office on February 3, 1970. Mr. Zambrano then consulted Mr. Black-

man, who was also a teacher at the high school and local chairman of the Arizona Educational Association, a professional organization representing various teachers in the State of Arizona. Mr. Blackman consulted the executive director of the AEA (also the organization's lawyer) requesting information as to the role he should play in representing Mr. Zambrano. He was advised that he, as a local representative of the Association, should appear with Mr. Zambrano at the February 3 meeting. Mr. Zambrano agreed with the suggestion and both went to the meeting of the Board.

The Board, meeting in executive session, without public notice, heard from other witnesses concerning Mr. Zambrano's conduct. They then called for Mr. Zambrano to enter the Board meeting. Mr. Blackman advised the Board that he was the local AEA representative and requested that he be present as a witness, accompanying Mr. Zambrano to the meeting. A confusing situation developed and the Board requested Mr. Blackman to leave and Mr. Zambrano to remain. Mr. Zambrano refused to remain and answer questions from the Board if Mr. Blackman's presence would not be allowed and both left the meeting. The Board immediately convened a special meeting and passed motions suspending Mr. Zambrano for alleged insubordination and suspending Mr. Blackman for allegedly not allowing the Board to function at a special executive meeting. Notices of these motions were mailed to both teachers. The letters also advised the teachers that they had 15 days in which to request in writing a public hearing at which, if they desired, they might be represented by counsel.

Both teachers sent written requests for a public hearing. A hearing was duly scheduled by the Board and both teachers, together with their attorney, appeared at the designated time and place. At the hearing no evidence was presented re the grounds for suspension, the Board members relying on instructions from their attorney that the purpose of the hearing was to provide the teachers an opportunity to present evidence on their own behalf. As a consequence of the hearing, each teacher received a termination notice, dated March 5, 1970, which recited that the Board had adopted the suspension theretofore rendered and further stated:

"Pursuant to Section 15–259 A.R.S. you are further notified that your contract of employment has been terminated for the following causes:

1. Lack of cooperation

2. Insubordination

And that your contract for the coming year will not be renewed and your employment is terminated for the same reasons."

Based on these facts, documentary exhibits and the depositions of the school superintendent and a Board member, the court ruled as follows, as indicated by a minute entry:

"THE COURT FINDS that the Board of the Indian Oasis School District did not comply with A.R.S. Section 15–254, as amended, when they terminated the employment of the Plaintiffs as follows:

1. They failed to send written notice to Plaintiffs setting forth the causes for a recommendation of dismissal.

2. The Board failed to initiate the hearing process, pursuant to A.R.S. 15–254.

3. The Board had determined the Plaintiffs' employment status prior to the hearing.

IT IS ORDERED that the Board's action terminating Plaintiffs' employment is set aside."

In the case of Flowing Wells School District v. Stewart, 18 Ariz.App. 19, 499 P.2d 750 (1972), we held that the hearing prescribed by A.R.S. § 15–254, as amended, must take place prior to March 15 in order to prevent the automatic renewal of a *continuing* teacher's contract. We stated:

"A comparison of A.R.S. § 15–254 prior to the amendment with the statute as amended revealed significant changes.

Under the new statute the process of termination begins with receipt by the teacher of a written notice specifying the cause or causes of the recommendation of dismissal. This puts the teacher on notice as to the exact reasons for dismissal so that the teacher can defend against them at the hearing which is now mandatory. There was no such provision in the old statute. The notice served on the teacher pursuant to A.R.S. § 15–252 under the old statute served two functions: (1) Notice of the reasons for dismissal so that the teacher knew what to defend against if he requested a hearing and (2) a record in case the teacher wished to appeal to the superior court pursuant to A.R.S. § 15–255 [Citation omitted].

More importantly, under the old statute the board, upon coming to a conclusion after the hearing, was to render its decision ' . . . *either affirming or withdrawing the notice of dismissal or termination.* . . .', whereas the present statute requires that '[i]f the decision is to dismiss . . . notice of termination shall be given as provided by §§ 15–252 and 15–253.' The old statute prescribed that the notice required by A.R.S. § 15–252 be given *prior* to the hearing. Under the new statute the notice is not given until *after* the hearing and this notice serves as a written record for the purposes of appeal. (Emphasis in original)

We further note that another statute was amended in 1965 in conjunction with the amendment of A.R.S. § 15–254. Prior to 1965 A.R.S. § 15–255 provided:

'A. The decision of the board shall be final unless the teacher aggrieved files, within ten days *after the date of the decision,* an appeal with the superior court of the county within which he was employed.' (Emphasis added).

In 1965, A.R.S. § 15–255 was amended and now provides:

'A. The decision of the board shall be final unless the teacher aggrieved files, within ten days *after receiving the notice of termination,* an appeal with the superior court of the county within which he was employed.' (Emphasis added)." 18 Ariz.App. at 22, 499 P.2d at 753.

Initially we must point out that there are two problems to be resolved: (1) Whether the teachers' contracts for the 1969–70 school year were wrongfully terminated, and (2) whether non-renewal of their contracts was effected for the subsequent year.

■ We agree with the trial court that termination of the 1969–70 teaching contracts was not effected in accordance with the precepts enunciated in Johnson v. Board of Education, 101 Ariz. 268, 419 P.2d 52 (1966). Although the record is not crystal-clear as to whether the teachers' status was "continuing" or "probationary", the parties to this litigation do not seem to dispute the fact that they were probationary teachers. In either case, the teachers could not be discharged from their currently operative contract "except for good cause after hearing." *Johnson,* supra, at 273, 419 P.2d at 56; Palicka v. Ruth Fisher School District No. 90, 13 Ariz.App. 5, 473 P.2d 807 (1970).

■ Although there is no statutorily-prescribed procedure for the conduct of the hearing, there is no question but that a teacher must be advised of the charge against him and given an opportunity to refute or explain the charge. Anthony v. Phoenix Union High School District, Maricopa County, State of Arizona, 55 Ariz. 265, 100 P.2d 988 (1940); *Johnson,* supra. The record presented here reflects that the teachers were not afforded a "hearing" which comports with due process requirements.

■ As stated in Stapleton v. Huff, 50 N.M. 208, 173 P.2d 612 (1946):

"The purpose of the hearing . . . is to develop the reasons or grounds which have moved the local board to notice the teacher of its desire to discontinue his services and afford him an oppor-

tunity to test the good faith and sufficiency of same. It must be fair and just, conducted in good faith and dominated throughout by a sincere effort to ascertain whether good cause exists for the notice given. If it does not or if the hearing conducted was a mere sham, then justification for the local board's action is lacking." 173 P.2d at 613.

The appellant-Board's "hearing" was a perfunctory offer to the teachers to appear and show cause why they shouldn't be discharged. They were afforded no opportunity to cross-examine witnesses against them—in fact, since the stated reason for their discharge was their "lack of cooperation" and "insubordination" at the February 3 meeting, the subsequent "hearing" in March was conducted by the teachers' accusers. We find no error in the trial court's determination that the teachers were entitled to recover damages for the wrongful termination of their 1969–70 contracts.

However, since these teachers merely had probationary status, no hearing was required as a condition precedent to non-renewal of their contracts. *Johnson,* supra; School District No. 8, Pinal County v. Superior Court of Pinal County, 102 Ariz. 478, 433 P.2d 28 (1967). The record reflects that the teachers received the required notice of non-renewal—the reason was adequately stated and the time requirement of A.R.S. § 15–252, as amended, was satisfied. Under these circumstances, the teachers were not entitled to relief for non-renewal of their contracts. The reasons given by the School Board for non-renewal were not subject to judicial scrutiny. Chesley v. Jones, 81 Ariz. 1, 299 P.2d 179 (1956).

The judgment is reversed and the cause remanded for a determination of the amount of damages appellees sustained by reason of their wrongful discharge for the 1969–70 school year.

HATHAWAY, C. J., and HOWARD, J., concur.