Karen **NICHOLS** and Clara Johnston,
Appellants,

v.

John **ECKERT** et al., Appellees.

No. 1572.

Supreme Court of Alaska.

Jan. 8, 1973.

John R. Strachan, of Robison, McCaskey, Strachan & Hoge, Anchorage, for appellants.

Harland W. Davis, Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

CONNOR, Justice.

This case concerns the dismissal of two non-tenured teachers from their employment. The question is whether they were accorded due process of law in the proceedings which led to their dismissal. More specifically, the issues presented to us for resolution are whether the teachers were entitled to a hearing, and, if so, whether the hearing given was adequate.

Karen Nichols and Clara Johnston, both certified to teach in Alaska, were employed by the Bristol Bay Borough School District to teach during the 1970–71 school year. Nichols entered into her contract on July 2, 1970, and Johnston entered into hers on May 6, 1970. Under the terms of the contracts the appellants agreed to abide by the rules of the Alaska Board of Education. Appellants commenced performance of their teaching contracts around September 1, 1970. Appellees are the members of the Bristol Bay School Board and William Gregory, who is the Superintendent of the Bristol Bay School District.

During the afternoon of October 23, 1970, Nichols became ill and was hospitalized in Dillingham, Alaska, where she remained until October 30, 1970. She returned to Naknek, the place of her teaching assignment, on November 20, 1970. By the time she returned to teaching on November 23, 1970, she had been absent for 21½ teaching days.

Johnston became ill on November 7, 1970, and was hospitalized in Anchorage, Alaska, from November 9, 1970, until November 22, 1970. She returned to Naknek, her teaching station, arriving on November 23, 1970. She had missed ten teaching days.

On the evening of November 23, 1970, both appellants were summarily dismissed from their teaching jobs by the school board. Each teacher was notified of the dismissal in separate letters signed by William Gregory. Both letters of dismissal cited AS 14.20.170(a) as authorizing the dismissal. This section provides that teachers may be dismissed only for the following cause:

"Incompetency, which is defined as the inability or the unintentional or intentional failure to perform the teacher's

customary teaching duties in a satisfactory manner."

In both letters, the reason given for dismissal was:

"In the judgment of the School Board your extended illness and the limitations imposed by the need for continuing medication and/or treatment constitutes failure to perform the teacher's customary duties in a satisfactory manner."

In the letter to Nichols the following particulars were given· as the justification for dismissal under AS 14.20.170(a)(1):

"(1) Your past and apparently continuing need for medical and/or physiatric [sic] attention.

(2) Your difficulty in getting along well with co-workers: The conflicts between yourself and the pre-school teacher over what should and should not be a part of the pre-school and Grade 1 curriculum.

(3) Your difficulty in getting along with parents of students: The conflict between yourself and the parents of students who have been exposed to First Grade materials prior to the beginning of the child's first grade instruction."

In the letter to Johnston the particulars were listed as follows:

"(1) Your past and apparently continuing need for medical and/or psychiatric attention.

(2) The failure to disclose the fact that you were unable to complete the 1969–70 school year.

(3) The lack of flexibility you display in accomodating to the diverse needs of children. A specific example of this is exhibited in your approach to the student Scott Stewart. In light of this pupil's subsequent performance in the Naknek Ungraded Primary Program, it is apparent that you could not, or would not meet the educational needs of this late enrolling student in your class. Your evaluation of the pupil is in direct opposition to the evaluations submitted by his three present teachers. Your reluctance to accept this boy into your class may be related to the rigid and inflexible procedures cited above.

A very similar situation presents itself in regard to the, again, late enrolling Pinette child. The parents of this child feel that you have been uncooperative and uncommunicative in helping them to overcome the deficit caused by this child's enrollment."

Prior to their dismissal the appellants were accorded no opportunity to be heard before the school board. On January 21, 1971, appellants brought an action in the superior court seeking to recover damages for breach of their employment contracts, and for violation of the due process clause of the fourteenth amendment, the due process clause of the Alaska Constitution, and the Civil Rights Act of 1871. Appellants also sought an injunction to restrain their discharge prior to a hearing of their case by the school board.

On April 24, 1971, the superior court entered an order remanding the case to the Bristol Bay Borough School Board for a hearing to determine the basis of the accusations made against the appellants in the letters of November 24, 1970. The court further ordered that appellants be given adequate notice of the hearing, that they be allowed to confront and cross-examine witnesses, that they be represented by counsel, and that the board make findings of fact and conclusions of law in order to reach a decision. Under this order the court retained jurisdiction of the matter.

When the hearing was held before the school board on April 26, 1971, the appellants' counsel attempted to call witnesses to testify for his clients, but the school board refused the request. At the conclusion of the hearing, the board reached a decision which affirmed the earlier acts of dismissal. Subsequently, on July 28, 1971, the superior court affirmed the decision of the board and stated, "[a] review of the transcript of the proceedings of the Bristol Bay Borough School Board and their findings convinces the court that their findings are

supported by the record." This appeal was taken from the superior court's ruling.

The teachers base their appeal on three major contentions: first, they were entitled to a hearing prior to their dismissal on the basis of AS 14.20.170(b), as well as the due process clauses of the United States Constitution and the Alaska Constitution; second, their dismissal was null and void because of the illegal manner in which it was accomplished; third, the decision by the school board was not supported by the evidence.

I

■ The appellants argue that their dismissal was improper under AS 14.20.170(b).[1] The express language of AS 14.20.170(b) clearly lacks any indication that the legislature intended to provide a hearing prior to dismissal for cause of a non-tenured teacher. First, the statutory provision is in a permissive form and allows temporary suspension during the investigation. Second, the reference to AS 14.20.180 cannot reasonably be interpreted to extend the hearing rights given to tenured teachers under that section. The distinction in treatment between the two types of teachers is quite clear from the express terms of AS 14.20.180.[2] If appellants have a right to a hearing, it is not to be found in that statute.

■ A decision on whether the dismissal procedure followed here was constitutionally permissible must be reached by evaluating the nature of the case in light of the due process clauses of the United States Constitution and the Alaska Constitution.[3] For that clause to apply there must be state action and the deprivation of an individual interest of sufficient importance to warrant constitutional protection.[4]

1. AS 14.20.170(b) provides:
"A teacher may be suspended temporarily with regular compensation during a period of investigation to determine whether or not cause exists for the issuance of a notification of dismissal according to § 180 of this chapter."

2. AS 14.20.180 provides:
"(a) An employer shall include in a notification of dismissal of a teacher who has not acquired tenure rights, or of nonretention or dismissal of a tenure teacher, a statement of cause and a complete bill of particulars.
"(b) The tenure teacher may, within 15 days immediately following receipt of the notification, notify the employer in writing that he requests a hearing before the school board, or if the tenure teacher is employed by the state, before an appeal panel consisting of the director and two members of the board. The tenure teacher may require in the notification that
(1) the hearing be either public or private,
(2) the hearing be under oath or affirmation,
(3) he have the right of cross-examination,
(4) he be represented by counsel,
(5) he have the right to subpoena a person who has made allegations which are used as a basis for the decision of the employer.

"(c) Upon receipt of the notification requesting a hearing, the employer shall immediately arrange for a hearing, and shall notify the tenure teacher or administrator in writing, of the date, time, and place of the hearing. A written transcript, tape, or similar recording of the proceedings shall be kept. Transcribed copies shall be furnished to the tenure teacher for cost upon his request. A final decision of the school board or the appeal panel requires a majority vote of the membership. The vote shall be by roll call. The final decision shall be written and contain specific findings of fact and conclusions of law. A written notification of the decision shall be furnished to the tenure teacher within 10 days of the date of the decision."

3. Alaska Const. art. I, § 7 provides in part: "No person shall be deprived of life, liberty, or property, without due process of law."
U.S.Const. Amend. XIV, § 1 provides in part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

4. Comments, The Constitutional Minimum for the Termination of Welfare Benefits: The Need for and Requirements of a Prior Hearing. 68 Mich.L.Rev. 112, 120 (1960).

■ The dismissal of the appellants by the school board was clearly under color of state law. Although courts in the past have frequently held that public employees have no absolute right to a hearing on discharge, because government employment is a privilege and not a property right,[5] courts recently have become more inclined to consider the causes of discharge and the methods and procedures by which it is effected, especially where the discharge affects reputation and the opportunity for employment thereafter.[6]

Any determination that appellants are entitled to due process in their dismissal is only preliminary to deciding the extent of the protection they must be accorded. The lack of precision of the due process protection was expressed by Mr. Justice Frankfurter in his concurring opinion in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 163, 71 S.Ct. 624, 644, 95 L.Ed. 817 (1951):

> "[W]hat is unfair in one situation may be fair in another. . . . The precise nature of the interest that has been adversely affected, the manner in which this was done, the reasons for doing it, the available alternatives to the procedure that was followed . . . the balance of hurt complained of and good accomplished—these are some of the considerations that must enter into the judicial judgment." (citations omitted)

In weighing these factors in the case at bar, we must consider the interests both of appellants and of the school district.

The interest of the appellants in not being dismissed without a hearing is manifest. Without an opportunity to be heard and to present their cases, they could be dismissed without good cause and with a serious charge of incompetency levied against

them, a charge which is permanently on their records and a hindrance to reemployment. In any event, the dismissal of a teacher on grounds of incompetency is a serious matter. The accused teacher is desperately in need of a fair and impartial forum in which the issue may be settled.

The interests of the school district are at least two-fold. First, there is an interest in protecting students from incompetent teachers; second, there is an economic interest in assuring that the school district can immediately hire another teacher without having to incur the added expense of paying two teachers for one position.

There is ample case law supporting the appellants' contention that they were entitled to a hearing. In Kuehn v. School District No. 70, 221 Minn. 443, 22 N.W.2d 220 (1946), the court held that in the absence of a statutory procedure for removing a teacher, a school board may not dismiss a teacher without notice and hearing. Appellees urge that *Kuehn* is distinguishable because the Alaska statute provides a procedure for removal of non-tenured teachers. But our statute does not mention any procedure to ensure fairness in the dismissal of a non-tenured teacher, other than notification of the cause for dismissal.

In Tracy v. School District No. 22, 70 Wyo. 1, 243 P.2d 932 (1952), the court expressed the view that, in the absence of a statute or contract permitting the removal of a teacher at pleasure, principles of justice require that a hearing should be given after notice to the party to be removed. The *Tracy* court held that a dismissal without a hearing or notice was a nullity.[7]

■ Certain United States Supreme Court cases, while not precisely in point, do provide guidance. One leading case is

---

5. Taylor v. Beckham, 178 U.S. 548, 577, 20 S.Ct. 1009, 44 L.Ed. 1187 (1900); Crenshaw v. United States, 134 U.S. 99, 104, 10 S.Ct. 431, 33 L.Ed. 825 (1890); In re Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402 (1888).

6. Birnbaum v. Trussell, 371 F.2d 672, 677 (2nd Cir. 1966).

7. *Accord,* Johnson v. Bd. of Educ., 101 Ariz. 268, 419 P.2d 52 (1966); Anthony v. Phoenix Union High School Dist., 55 Ariz. 265, 100 P.2d 988 (1940); School Dist. No. 1 v. Thompson, 121 Colo. 275, 214 P.2d 1020 (1950).

Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). It holds that summary dismissal of a college professor, without any inquiry as to whether continued employment is inconsistent with the interests of the state, violates due process. While most of the cases such as *Slochower* arise from controversies concerning disloyalty, the same rule applies whenever the potential injury to a public employee is substantial.[8]

■ From the case law it is implicit that a hearing is the procedure most likely to lead to a fair determination. The stigma which attaches to a discharge for incompetence is sufficiently injurious to call for this type of safeguard.[9]

Appellees argue that a hearing is not necessary for a non-tenured teacher, relying upon Whaley v. State, 438 P.2d 718 (Alaska 1968) and State v. Redman, 491 P.2d 157 (Alaska 1971). In *Whaley*, however, the provisional employee served at the pleasure of the appointing agency. In the case at bar, appellants could only be dismissed for cause. A dismissal for cause has an adverse effect on appellants because it harms their professional reputations. *Redman* stands for the proposition that tenured and non-tenured teachers may be accorded dif-

ferent treatment under a particular statutory scheme, but does not discuss the due process question here involved.

With these factors considered, we hold that appellants were entitled to a hearing. Even though a hearing is not accorded to non-tenured teachers by statute, the constitutional requirements of due process overcome any statutory rule.

As we shall explain further, the hearing given to appellants was so deficient as to require reversal. For this reason, the writer of this opinion does not reach the question of whether the failure to have the hearing prior to dismissal would, in itself, have required us to reverse. The other members of the court do reach a determination of this question, as expressed in their concurring opinion.

## II

We find that the decision, rendered by the school board after the hearing on remand from the superior court, cannot be allowed to stand.

■ When principles of due process attach, there is a certain level of procedural fairness that must be accorded to an affected party. This level of fairness cannot be found in the instant case.

---

8. See, e. g., Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); United Pub. Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). *Cf.* Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); Schware v. Bd. of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). The contractual terms of employment must be considered in each instance. We are not confronted in this case with questions about provisional and temporary employees.

9. Developments—Academic Freedom, 81 Harv.L.Rev. 1045, 1083 (1970). *See* Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).
Although both cases deal with distinguishable fact situations, namely a failure to rehire and not a dismissal, as here, the reasoning is appropriate. In both cases,

the Court held that a teacher must prove that he has been deprived of an interest in "liberty" or "property" before that interest is protected by the Fourteenth Amendment. In *Roth*, after one year of teaching under a one-year contract, the teacher did not acquire tenure rights to continued employment; therefore, he did not have an interest in "property" and a hearing before the Board on failure to rehire was unnecessary. In *Perry*, the Court held that where a teacher is employed for a number of years, he should be allowed to show that a de facto tenure system exists: in such a situation, a hearing is necessary.
In the case at bar, a mid-year dismissal is at issue. Clearly the teachers have been deprived of an interest in property, namely, their present teaching posts. This is an interest protected by the Fourteenth Amendment to the U. S. Constitution and by the first article of the Alaska Constitution, and thus they are entitled to a hearing.

Most significantly, appellants were denied the right to call witnesses to testify on their behalf. Where the nature and consequences of the charge are serious, as the charge of incompetency is here, the right to present witnesses on one's behalf is manifest: a hearing in which only one side presents evidence is inherently unfair.

A recent United States Supreme Court case, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), concerning termination of welfare benefits, has upheld the right of affected parties to present their own arguments in their defense during an administrative hearing. In questioning the procedures for terminating welfare benefits, the Court there established minimal procedural safeguards for a hearing. Although the Court did not require a full judicial trial, it held that where the welfare recipient was not permitted to present evidence and to confront and cross-examine adverse witnesses, the hearing was inadequate. Such omissions were "fatal to the constitutional adequacy of the procedures." 397 U.S. at 268, 90 S.Ct. at 1021.

The Fifth Circuit has also clarified standards for a fair administrative hearing. In ruling on the adequacy of a student's hearing prior to expulsion from a state college, the court stated that

"[t]he nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires something more than an informal interview with an administrative authority of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the Board or the administrative authorities of the college an opportunity to hear both sides in considerable detail is best suited to protect the rights of all involved. This is not to imply that a full-dress judicial hearing . . . is required. . . . [The student] should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges . . .." Dixon v. Alabama State Board of Education, 294 F.2d 150, 158, 159 (5th Cir. 1961).

In the case before us we conclude that appellants must be given the opportunity to present their own defense by testimony and other evidence.

A full judicial hearing is not necessary, but a hearing that allows the administrative authority to examine both sides of the controversy will protect the interests and rights of all who are involved. We realize that a full judicial hearing could be time consuming and, therefore, possibly detrimental to the interests of the school district, which might be required to delay the dismissal of a perhaps unsuitable or incompetent teacher. But the rudiments of an adversary hearing can be preserved without casting an undue burden on the school district.

Considering the nature of the hearing in this case, we can ascertain no reason why the appellants should have been denied the right to call witnesses on their behalf. The school board says that it refused the appellants' request to call witnesses because the superior court order granting the hearing did not specifically mention that right. But it was not necessary that the order specify every essential constitutional guarantee in order to make such constitutional procedures effective.

### III

We do not reach appellants' third contention of error, that the conclusion of the board was not supported by the evidence.

Because the appellants were improperly discharged, we must reverse the decision of the superior court. This case is remanded to the superior court for further proceedings consistent with this opinion.

Reversed and remanded.

ERWIN, Justice, with whom RABINO-WITZ, Chief Justice and BOOCHEVER, Justice, join, concurring.

 While we generally agree with the holding reached in Justice Connor's opinion for the court, we would go further and require that except in certain extraordinary situations, the hearing necessary to satisfy the requirements of the due process clause of the Alaska Constitution[1] must be held prior to the mid-term suspension or discharge of a non-tenured teacher.[2]

There may be certain exceptional instances in which the conduct of a teacher would present a serious and imminent threat to the physical or psychological well-being of the students. In such cases, the immediate removal of the teacher from the classroom would be justified. The requirements of due process would be met by a procedure which provided for the suspension of the teacher with pay pending the prompt convening of a full hearing. Absent such extraordinary circumstances, however, a hearing must be afforded a non-tenured teacher before suspension or discharge.

The suspension or discharge of a non-tenured teacher prior to the expiration of the term of his or her contract is a very serious matter and may cause substantial injury. Specifically, such suspension or discharge may cause economic hardship, create a stigma of incompetence and blemish the teacher's professional reputation, decrease the possibility of other educational employment opportunities, deny the teacher the opportunity to pursue a chosen professional activity, and disrupt an existing educational relationship between teacher and students. As the Eighth Circuit recently observed in Cooley v. Board of Education of Forest City School District,[3]

> Given the ensuing economic hardship of a summary deprivation of the source of one's livelihood, and in view of the awesome and potentially stigmatizing effect of mid-year termination, such a case as this assuredly presents one of the clearest instances where the rule of procedural Due Process, properly applied, must operate to interdict injurious and reckless governmental treatment.[4]

In view of the potentially serious injury which would result from an unjustifiable, arbitrary discharge or suspension of a non-tenured teacher, we would employ higher standards of procedural due process and would require the holding of a hearing prior to any suspension or discharge.

---

1. Alaska Const., Art. I, § 7; *see also* K & L Distributors v. Murkowski, 486 P.2d 351, 356–358 (Alaska 1971).

2. *Cf.* Lafferty v. Carter, 310 F.Supp. 465 (W.D.Wis.1970); for discussions of whether due process requires a hearing before a teacher may be terminated or his contract not renewed *see generally* W. A. Alatyne, The Constitutional Rights of Teachers and Professors, 1970 Duke L. J. 841 (1970); Comment, Due Process Restrictions on the Employment Power and the Teaching Profession, 50 Neb.L. Rev. 655 (1970–71); Comment, Constitutional Problems in the Nonretention of Probationary Teachers, 1971 U.Ill.L.For. 508 (1972); Note, Non-Tenured Teachers and Due Process: The Right to a Hearing and Statement of Reasons, 29 Wash. & Lee L.Rev. 100 (1972); Note, Constitutional Law-Due Process-Fairness of a Hearing Before a School Board on Non-renewal of a Teacher's Contract, 296 Wisc.L.Rev. 354 (1971); Article, The Fourteenth Amendment, Fundamental Fairness, The Probationary Instructor, and the University of California—An Incompatible Foursome?, 5 UCD L.Rev. 608 (1972–73); Note, Probationary Public School Teachers and Procedural Due Process: Is a Hearing Useful—Drown v. Portsmouth School District, 1971 Utah L. Rev. 573 (1971); Note, Constitutional Law-Due Process-Arbitrary and Capricious Abuse of Discretion in Non-Renewal of Teacher's Contract, 8 Wake Forest L. Rev. 131 (1971); Comment, Non-Tenure Teachers: Procedural Rights Upon Dismissal, 3 Loy.U.L.J. 114 (1972).

3. 453 F.2d 282 (8th Cir. 1972).

4. *Id.* at 286.