STATE of Alaska, DEPARTMENT OF MILITARY AND VETERANS AFFAIRS, Alaska National Guard, Appellant and Cross–Appellee,

v.

Gary W. BOWEN, Appellee and Cross–Appellant.

Nos. S–6842, S–6822.

Supreme Court of Alaska.

Feb. 13, 1998.

---

organized militia, was involuntarily terminated from his employment in May 1993. He appealed his termination to the superior court, arguing principally that the State Department of Military and Veterans Affairs, Alaska National Guard (State) had failed to follow the provisions of the Alaska Personnel Act and had deprived him of due process of law in the procedures that it employed in terminating his employment. The State contended that Bowen was a federal employee and that state courts had no jurisdiction over the matter; that, regardless of the jurisdiction of the state courts, federal law governed the right and nature of any hearing to which Bowen was entitled; that even if he were a state employee the state personnel act did not apply to him; and that the termination procedures employed did not violate his due process rights under the Alaska Constitution.

Superior Court Judge Karen Hunt concluded that Alaska courts had jurisdiction over this dispute, that Bowen was a state employee, that the Alaska Personnel Act did not apply to him, and that his protected property interest in full severance pay was affected without due process under the Alaska Constitution. Judge Hunt found that Bowen had no protected property interest in continued employment and no protected liberty interest in his reputation and his ability to gain future employment. The court remanded the matter to the State for a hearing to remedy the violation concerning severance pay. Both parties have appealed.

The State appeals the superior court's decision in several respects. The State submits that while federal law and regulations "arguably" have completely occupied the field of National Guard employment so that the states are pre-empted from legislating or regulating in this field, states are, in any case, pre-empted from legislating or regulating in a manner which conflicts with federal law, and that applying "state due process law and procedures" in this case conflicts with the federal procedures regulating removal of employees and therefore may not control this case. In addition, the State argues that Na-

Patrick J. Gullufsen, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellant and Cross–Appellee.

Milford H. Knutson, Bledsoe & Knutson, Anchorage, for Appellee and Cross–Appellant.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

OPINION

CARPENETI, Justice Pro Tem.

## I. INTRODUCTION

Gary Bowen, who had served for nine years in the active state service of the state

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

tional Guard separation and separation pay issues are not reviewable; that Bowen failed to exhaust his administrative remedies; and that Bowen lacks a property interest in full separation pay which is protected by due process. Assuming Bowen's property interest in full separation pay is protected by due process, the State further contends that the requirements of due process were satisfied by the remedies available to Bowen. Finally, the State maintains that the superior court erred in determining that the federal regulation governing the procedure to be employed in connection with the discharge of a National Guard employee was unconstitutional as applied under the state constitution.

Bowen cross-appeals, arguing that the superior court erred in failing to find he was entitled to: (1) the protections of the State of Alaska Personnel Act (AS 39.25.010 *et seq.*), and (2) a pretermination hearing under article I, section 7 of the Alaska Constitution. Bowen argues that he was deprived of a liberty interest without due process of law as guaranteed under article I, section 7, and the Fourteenth Amendment of the United States Constitution, by being denied a pretermination administrative hearing prior to the decision of the DMVA to terminate his employment. Finally, Bowen argues that the superior court erred in failing to order a trial *de novo* as the method of conducting the pretermination administrative hearing ordered by the court, or, in the alternative, in failing to mandate some method insuring an impartial hearing.

We conclude that the courts of the State of Alaska have jurisdiction over this case, that Bowen was a state employee, that the State Personnel Act did not apply to him, and that his property interest in full severance pay entitled him to a hearing before his severance pay could be reduced. We affirm the superior court in all of these respects. We further conclude that Bowen has a protected liberty interest in his reputation under the Alaska Constitution, and therefore reverse that portion of the superior court's decision that held to the contrary. In all other respects, we affirm the superior court's order reversing the Department of Military and Veterans Affairs' (DMVA) decision terminat-

ing Bowen without first giving him an adversarial pretermination hearing.

## II. FACTS AND PROCEEDINGS

In April 1983 Gary Bowen was appointed as an officer in the state organized militia, as defined in AS 26.05.010(b)(1), for purposes of periodic training and drill as a Judge Advocate. This is the familiar part-time duty of the National Guard. Approximately one year later, in June 1984, pursuant to 32 U.S.C. § 502(f) and Air National Guard Regulation (ANGR) 35–03, Bowen was ordered to active service in the Active Guard/Reserve (AGR). He was ordered to full-time duty with the Alaska Adjutant General under the Alaska Department of Military and Veterans Affairs to serve as the Staff Judge Advocate, Attorney Advisor, at the headquarters of the Alaska National Guard. Bowen was periodically reappointed to this position by orders issued in April 1985, June 1988, and April 1991. Each order identified 32 U.S.C. § 502(f) and ANGR 35–03 as the authorities for the appointments; each order also stated that the duration of the appointment was as indicated "unless sooner relieved by competent authority."

In 1992 Bowen was directed to work on the implementation of the Alaska State Military Justice System. Bowen's immediate supervisor on this project was Alaska Air National Guard Colonel Jerry W. Gillean; Bowen's supervising project officer was Alaska Air National Guard Brigadier General Dan Dennis. In February 1993 Colonel Gillean notified Bowen that he had recommended to the commander of the Alaska National Guard, Adjutant General, Major General Hugh L. Cox III, that Bowen be involuntarily terminated from full-time AGR duty. Colonel Gillean cited the following reasons for this recommendation:

a. You failed to timely and properly respond to allegations of personal financial irregularities which were discovered during a security reinvestigation. As a result of these allegations your access to classified information was withdrawn on 6 November 1992. Although you knew that your supervisors considered this situation serious, you took no action to respond to

their concerns until you were directed to do so on 4 Dec 92. Your response failed to produce any documentation that would have cleared up this concern. The dilatoriness of your response and the inadequacy of your answers have resulted in a breach of trust between the leadership of the Alaska National Guard and you as our full time staff judge advocate.

b. On 19 Nov 92 you had General Cox sign a leave slip for yourself which you then failed to properly process. When you returned to work on 4 January 1993, you did not file your leave completion until I inquired into this matter with you on 21 January 93. I also requested an explanation of your failure to obtain a leave authorization number and an explanation of why you delayed in closing out the leave transaction. You have not provided me with such an explanation. You have been given a letter of reprimand for your actions in this leave incident. This misconduct has further eroded the relationship that should exist between your employer and yourself.

This notice advised Bowen that his recommended termination from full-time AGR duty would be in accordance with paragraph 6–5c of ANGR 35–03 and that under these regulations he had five work days in which to file a written response. Bowen requested and received counsel and was also given additional time to submit his response. Bowen then filed detailed written rebuttals to the above charges.

In March 1993 Bowen, through private counsel, requested a pretermination hearing to challenge the allegations. This request was promptly denied by Colonel Gillean. Gillean stated that Bowen was "not entitled to a pretermination hearing because he [had] failed to assert a protected interest," and that the procedures set out in ANGR 35–03 provided "sufficient administrative due process safeguards" for Bowen.

In early April 1993, after reviewing the responses submitted by Bowen, Colonel Gillean formally recommended Bowen's termination from his Active Guard and Reserve tour. This recommendation was forwarded with the case file to Brigadier General Kenneth M. Taylor, Jr., for review.

On April 5, 1993, General Taylor notified Bowen that he also recommended Bowen's involuntary termination from full-time AGR duty. Taylor restated Gillean's reasons for the recommended action and added a further charge:

> On 13 May 92, you were tasked by Maj Gen Cox, Adjutant General Alaska National Guard, to work on the implementation of a military justice system for the state of Alaska. Through your personal dereliction and lack of initiative, a plan for a military justice system was inexcusably delayed. Your failure to perform this task, despite extensive supervision, has left the commanders assigned to the Alaska National Guard no vehicle in which to enforce discipline for an extended period of time.

In documentation running over 300 pages in length, Bowen denied all of the allegations with detailed answers and rebuttals. Bowen also denied that any of the charges against him amounted to "misconduct" or wrongdoing in any other respect.[1]

General Taylor's recommendation and Bowen's responses were sent to Brigadier General Dan E. Dennis for review. General Dennis concurred in the recommendation to terminate Bowen from AGR duty, which he then formally made to Adjutant General Cox.

On May 2, 1993, Adjutant General Cox denied Bowen's request for a pre-termination hearing, stating he had "reviewed AGR 35–03 and [found] this type of hearing [was] not required under that regulation." On May 3, 1993, Adjutant General Cox issued his decision on the recommendations for separation from AGR status he had received from the aforementioned subordinate officers:

> 1. I have carefully reviewed the Notification of Action of Involuntary Separation, dated 16 April 1993, with attachments and your response to this action.

> 2. I believe the preponderance of the evidence clearly supports the termination of your full-time Air National Guard duty

---

1. Bowen maintains that the regulation relied upon by the State, ANGR 35–03, fails to define "misconduct" and therefore provides no basis for termination.

(AGR) tour from the Alaska National Guard under paragraphs 6–5(c)(1), acts of ·misconduct, and 6–5(c)(2), professional dereliction, of ANGR 35–03.

Bowen requested reconsideration which Adjutant General Cox denied.

On May 14, 1993, Bowen submitted a letter to the Alaska Personnel Board requesting a hearing under AS 39.25.170. This request was denied.

On May 20, 1993, the DMVA issued Special Order AGR–092 terminating Bowen's employment by order of Alaska Governor Walter J. Hickel. Bowen was then issued a Certificate of Release or Discharge from Active Duty (a Department of Defense Form 214). Bowen was sent two copies of the DD Form 214, one containing no indication of the underlying reasons for his discharge and the other specifying an honorable discharge with reason stated as "misconduct."

Bowen appealed the termination of his AGR status to the superior court, arguing that he was entitled to a pre-termination hearing pursuant to the State Personnel Act, AS 39.25.170, and article I, section 7 of the Alaska Constitution. Bowen also argued that the denial of a pre-termination hearing deprived him of liberty and property without due process of law in violation of both the federal and state constitutions.

The superior court concluded that Bowen was deprived of a vested property interest in full severance pay and was thus entitled to a full adversarial hearing consistent with this court's holdings in *City of Homer v. State, Dep't of Nat. Resources,* 566 P.2d 1314, 1319–20 (Alaska 1977), and *Nichols v. Eckert,* 504 P.2d 1359, 1365 (Alaska 1973).[2] The superior court, however, rejected Bowen's argument that his involuntary discharge for misconduct implicates a protected liberty interest both in his reputation and his ability to gain future employment. The superior court then reversed the action of the DMVA and remand-

ed the matter back to the· DMVA for a pre-termination hearing.

Bowen requested reconsideration of the portion of the superior court's ruling that the matter be remanded to the DMVA, arguing that the DMVA had demonstrated a bias and predisposition to resolve the matter adversely to Bowen. The DMVA requested clarification of the court's order.[3] The superior court denied both motions on November 28, 1994.

This appeal and cross-appeal followed. ·

## III. DISCUSSION

### A. Standard of Review

■ This court exercises its independent judgment concerning questions of law raised by an administrative agency decision where there is no special agency expertise. *Phillips v. Houston Contracting, Inc.,* 732 P.2d 544, 546 (Alaska 1987); *North Slope Borough v. LeResche,* 581 P.2d 1112, 1115 (Alaska 1978).

### B. Reviewability of Allegations of Deprivation of Constitutional Rights by the Military

The State argues that civilian courts should not review Bowen's allegation that he was deprived of his constitutional rights by the military because (1) the courts of Alaska do not have jurisdiction over this matter, (2) state law is pre-empted by federal law in this area, (3) such claims are nonjusticiable, and (4) Bowen did not exhaust his administrative remedies. We reject each of these arguments.

### 1. Jurisdiction

■ The State argues that the superior court acted beyond the jurisdiction of a state appellate court in ruling that the process mandated by federal regulation for separation of members from the AGR program and

---

**2.** The superior court reasoned that Bowen had a vested property interest in full severance pay, and because a discharge for misconduct or professional dereliction would result in the reduction of the amount of severance pay to which Bowen was otherwise entitled by almost one-half, Bowen must receive a full, adversarial hear-

ing as delineated under the state constitution before this interest could be reduced.

**3.** The State asked the court to clarify whether payment to Bowen of his full severance pay would, under the court's decision and order, render a hearing unnecessary.

for determining eligibility for separation pay violates the due process requisites of the state constitution. The State further argues that this court would also exceed its jurisdiction if it were to uphold the decision of the superior court.[4]

■ The State's argument regarding jurisdiction[5] misperceives what occurred below. The superior court was not asked to rule on the constitutionality of any federal statute or of ANGR 35–03. Furthermore, the superior court did not rule that any federal statute or regulation violates the state constitution. The superior court held that, *pursuant to federal law*, the state constitution's due process clause must be followed before separation pay may be withheld or reduced. The court also determined that Bowen, as a member of the state National Guard, is a state employee. State courts have jurisdiction to decide cases regarding the discharge of members of the National Guard who are state employees. *E.g., Sorrentino v. Ohio Nat'l Guard*, 53 Ohio St.3d 214, 560 N.E.2d 186, 190–91 (1990) (recognizing court's jurisdiction to decide cases regarding discharge of state National Guard members not in active federal service under modern militia system). The superior court was correct in both regards. We hold that Alaska has jurisdiction in this case.

### 2. Pre-emption

■ The State argues that Congress and the Secretary of the Air Force have acted to regulate comprehensively the administration of the AGR program in the Alaska Air National Guard, including the procedures to be followed in the case of separation, and that the states are pre-empted from applying additional and different procedures.[6] The State further argues that even where federal law or regulation does not comprehensively occupy the field, state law cannot stand if it conflicts with federal regulation.[7]

While the federal government might have acted to regulate comprehensively the administration of the AGR program in the Alaska Air National Guard, it has not done so. Examination of two federal laws shows this. First, 32 U.S.C. § 324(b) allows termination of a National Guard officer "as provided by

---

4. The State cites *Kansas City Power & Light Co. v. State Corp. Comm'n*, 238 Kan. 842, 715 P.2d 19, 22 (1986) (holding that if a federal statute does not violate the Constitution of the United States, it cannot be held unconstitutional on the grounds that it violates a state constitution). *Kansas City Power & Light* does not apply to this case because we are not addressing the constitutionality of ANGR 35–03.

5. While denominated by the State as an argument going to jurisdiction, this is really a supremacy clause argument. For the reasons noted below, there is no supremacy clause violation here.

6. We set out the tests for federal pre-emption in *Totemoff v. State*, 905 P.2d 954 (Alaska 1995):

> Federal law can preempt state law in three ways. First, Congress may expressly declare that state law is preempted. Second, state law is preempted if Congress intends the federal government to occupy a field exclusively. Third, federal law preempts state law if the two actually conflict. *See, e.g., Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 604–05, 111 S.Ct. 2476, 2481–82, 115 L.Ed.2d 532 (1991); *English v. General Elec. Co.*, 496 U.S. 72,, 78–79, 110 S.Ct. 2270, 2274–75, 110 L.Ed.2d 65 (1990).

> *Id.* at 958. The State relies on only the second and third preemption tests set out in *Totemoff*.

For more recent discussions of the pre-emption doctrine, see *State v. Arnariak*, 941 P.2d 154 (Alaska 1997).

7. In response, Bowen maintains that the doctrine of "federal pre-emption" only applies where federal courts are granted exclusive jurisdiction over a federal cause of action to the exclusion of any state court. Bowen argues that the general rule is that state courts are considered presumptively competent to adjudicate issues and claims arising under federal law, citing *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834 (1990).

Bowen's argument is not responsive to the State's argument. The State's argument goes to the power of the State to legislate or pass regulations either at all or in conflict with the federal laws and regulations. Bowen's response concerns the jurisdiction of state courts, another aspect of pre-emption and one which the State does not argue here.

In summary, there are some areas of federal law in which the states may not legislate or regulate but state courts may adjudicate the disputes which arise under federal law. The State takes the position that this case fits in this category. There are other areas of federal law where the states not only may not legislate or regulate, the state courts may not adjudicate. Bowen argues that the State claims that this is such an area. The State has not made that argument.

the laws of the State."[8] Congress has chosen to affirm, rather than abridge, the states' role in terminating officers of their National Guards. This is clear recognition that state law may provide additional termination requirements.

Second, analysis of ANGR 35–03 shows that the regulation was drafted with the applicability of state laws in mind. Chapter 6, section 6–5(a) of the regulation provides in relevant part that

> personnel will be involuntarily removed from full-time National Guard duty only IAW [in accordance with] procedures prescribed herein *and only after the state Adjutant General determines that all applicable laws and regulations have been complied with.*

(Emphasis added.) Given that termination of a National Guard officer may only be "as provided by the laws of the State" under 32 U.S.C. § 324(b), and given that the Adjutant General must determine that all applicable laws have been complied with, it is clear that applicable state constitutional provisions must be enforced in the termination process.[9]

Nothing in the federal statute or regulations appears to disallow the application of state constitutional requirements in addition to the procedures set out in ANGR 35–03; indeed, the statute and regulations invite state law participation in the termination process. We therefore conclude that Congress has neither expressly nor impliedly pre-empted state law in this field.

Only one termination procedure exists, which eliminates the possibility of conflicting decisions. Given the language in ANGR 35–03 and 32 U.S.C. § 324, there is no inherent conflict between the termination procedures set forth in ANGR 35–03 and additional state constitutional procedural safeguards. In short, there is no conflict with federal law. Therefore, we conclude there is no federal pre-emption and affirm the ruling of the superior court.

### 3. Justiciability

The State argues that AGR separation and separation pay issues are nonjusticiable.[10] The State cites a test adopted in

8. The statute provides in relevant part that
   the appointment of an officer of the National Guard may be terminated or vacated *as provided by the laws of the State or Territory of whose National Guard he is a member . . . .*
   (Emphasis added.) Emphasizing the role of the states in procedures involving termination of National Guard officers, 32 U.S.C. app. § 1101.5 (National Guard Regulations) provides in part:
   *Termination of appointments and withdrawal of Federal recognition—(a) Authority*
   The termination of the appointment of a commissioned officer of the National Guard is a function of the State authorities.

9. It should also be noted that ANGR 35–03, Chapter 1, section 1–4 allows the state Adjutant General to supplement the regulation "provided the specific requirements herein are not abridged." The addition of a requirement of a hearing does not in any way abridge any of the specific requirements of ANGR 35–03, section 6–5 (Separation for Cause and Procedure). Rather, it supplements them. The state Adjutant General, who under ANGR 35–03, section 1–4, "is authorized to issue supplements" to the regulation, is not prohibited by the regulation from following state constitutional requirements as well as the regulation.

10. Nonjusticiability claims are most often raised in the context of "political questions," about which we have said: "[t]here are certain questions involving coordinate branches of the gov-

ernment, sometimes unhelpfully called political questions, that the judiciary will decline to adjudicate." *Abood v. Gorsuch*, 703 P.2d 1158, 1160 (Alaska 1985). As we noted in *Abood v. League of Women Voters*, 743 P.2d 333 (Alaska 1987), "[i]t is not possible to draw the exact boundary separating justiciable and nonjusticiable questions." *Id.* at 336. This conclusion rested on *Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). In his plurality opinion, Justice Frankfurter wrote:

> Justiciability is of course not a legal concept with a fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures, including the appropriateness of the issues for decision ... and the actual hardship to the litigants of denying them the relief sought.

*Id.* at 508–09, 81 S.Ct. at 1759. The United States Supreme Court has identified a number of elements, one or more of which is "[p]rominent on the surface of any case held to involve a political question." *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). Of the elements identified by the Supreme Court, the only one even arguably present in this case is "the impossibility of a court's undertaking independent resolution [of the case] without expressing lack of the respect due coordinate branches of government." *Id.* For the reasons set out in the text, we conclude that this element is not in fact present here.

*Christoffersen v. Washington State Air Nat'l Guard,* 855 F.2d 1437, 1442 (9th Cir.1988).[11] We decline to apply the *Christoffersen* test because Bowen is a state employee, not a federal employee. Furthermore, the question whether deprivation of property rights by an Alaska administrative agency is sufficient to invoke constitutional due process is not one of military expertise or one which causes interference with the military mission.[12]

This court is not being called upon to intrude into any issues of military doctrine or other matters committed to the expertise of military commanders. Rather, we are asked to review the decision of the superior court that analyzed the actions of the DMVA and determined that it transgressed the constitutional rights of one of its employees. We therefore hold the issues on appeal in this case are justiciable.

### 4. *Exhaustion of Administrative Remedies*

■ The State argues that in concluding that Bowen was entitled to an adversarial hearing under state law before his separation pay could be reduced, the superior court overlooked Bowen's failure to exhaust his intraservice administrative remedies in this regard. The State contends that Bowen could have sought relief from the Air Force Board for Correction of Military Records

(AFBCMR) under 10 U.S.C. § 1552 and 32 C.F.R. § 865.1 *et seq.* The State asserts that the AFBCMR is available, upon application by a member of the National Guard, to review a nonretention decision on a claim that it was the result of error or injustice and to correct the member's records and reinstate pay and other federal compensation or benefits that were lost.

This issue not having been properly raised before the superior court, we will not consider it on appeal.[13] We have previously held:

> Waiver in superior court may occur either in a suit initiated there, or when the superior court is reviewing agency action. In agency review, an issue may be abandoned on appeal to the superior court, either by failing to include it in the points on appeal or by inadequate briefing.

*Nenana City Sch. Dist. v. Coghill,* 898 P.2d 929, 934 (Alaska 1995) (citation omitted). *See also Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985) ("As a general rule, a party may not present new issues or advance new theories to secure a reversal of a lower court decision.") (citing *O'Neill Investigations, Inc. v. Illinois Employers Ins. of Wausau,* 636 P.2d 1170, 1175 n. 7 (Alaska 1981)); *Williams v. Alyeska Pipeline Serv. Co.,* 650 P.2d 343, 351 (Alaska 1982) (holding argument not raised before

---

**11.** Under this test, review of internal military decisions requires, first, an allegation that a recognized constitutional right has been violated and a showing that all intraservice remedies have been exhausted. If these prerequisites are met, four additional factors must be weighed. Then, only if the balance favors court interference, will review be undertaken. *Christoffersen,* 855 F.2d at 1442.

**12.** It is within the province of this court to determine constitutional issues and deprivation of constitutional rights. *See Kiester v. Humana Hosp. Alaska, Inc.,* 843 P.2d 1219, 1223 (Alaska 1992) (holding court would determine whether the procedures employed by hospital conformed to Alaska Constitution and were in accordance with basic principles of fairness and due process of law; *see also Emory v. Secretary of Navy,* 819 F.2d 291, 294 (D.C.Cir.1987) ("The military has not been exempted from constitutional provisions that protect the rights of individuals.... It is precisely the role of the courts to determine whether those rights have been violated."); *Dil-*

*lard v. Brown,* 652 F.2d 316, 319–20 (3d Cir. 1981) (upholding justiciability of sex discrimination and constitutional privacy claims brought by female enlistee who was discharged from New Jersey National Guard because constitution does not prevent a federal court from entertaining an appropriate constitutional claim brought against the military).

**13.** Bowen also argues that Boards for Correction of Military Records of the various armed services are inappropriate to determine constitutional claims. *See Glines v. Wade,* 586 F.2d 675, 678 (9th Cir.1978), *rev'd on other grounds,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980) ("Resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board.") (quoting *Downen v. Warner,* 481 F.2d 642, 643 (9th Cir.1973)); *but see Guerra v. Scruggs,* 942 F.2d 270, 273 (4th Cir.1991) ("The ABCMR has authority to consider claims of constitutional ... violations.").

superior court will not be considered on appeal).

The State concedes that it did not raise this issue specifically before the superior court, but contends that its arguments before the court specifically and impliedly urged deference to the existing military administrative process and avoidance of judicial interference. The State asserts that this is a central theme of the exhaustion principle. Citing this court's adoption of a "liberal approach" in determining whether an issue was raised in the superior court,[14] the State submits that the exhaustion issue should not be deemed waived.

In its brief before the superior court the State argued the following:

A. Major Bowen Was Not a State Employee.

B. If Major Bowen Is Not a State Employee, Then His Employment Is a Federal Matter and Beyond the Jurisdiction of This Court.

C. Regardless of Who the Employer Was, the Employment Contract Made Federal Regulations Applicable to Major Bowen's Employment.

D. Federal Law Governs the Right to and Nature of Any Hearing.

E. The Procedures in ANGR 35–03 Satisfy the Requirements of Due Process.

Obviously, none of these arguments included a claim that Bowen failed to exhaust his administrative remedies. Additionally, we have reviewed the entire text of each argument set out under each of these headings. None raises the issue of exhaustion of administrative remedies. Even when viewing the State's pleadings before the superior court liberally, there is no allegation whatsoever of the issue now argued before this court. Therefore, we hold that this issue was waived because the State failed to include it in its brief to the superior court. *Nenana City Sch. Dist.*, 898 P.2d at 934.

## C. Separation Pay

### 1. Whether Bowen has a property interest in full separation pay

■ As a State employee under the National Guard AGR program, Bowen's pay was federally funded under 32 U.S.C. § 502(f). Upon his termination he was entitled to severance pay under Department of Defense Pay Manual (DoDPM), Chapter 4, Section B, 40411a. Once DMVA determined that Bowen was guilty of "misconduct," however, his severance pay was reduced by one-half and he lost severance pay in the approximate amount of $37,030. DoDPM, Chapter 4, Section B, 40411b.

The superior court found that property interests protected under Alaska's due process clause are defined by existing state laws, rules, or customs. The superior court relied on *Breeden v. City of Nome*, 628 P.2d 924, 926 (Alaska 1981) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)), in which this court stated:

> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.[15]

The superior court found that where pay manuals define the amount of separation pay due an employee upon involuntary discharge, the employee has a legitimate expectation of a certain amount of such pay upon involuntary termination. The court concluded that Bowen established a protected property interest in such pay.

The State contends that Bowen does not have a property interest in full separation pay. The State maintains that separation

---

**14.** The State cites to *Zeman*, 699 P.2d at 1280, where this court stated that if

> arguments (1) are not dependent on new facts, (2) are closely related to [the party's] trial pleadings and (3) could have been gleaned from the pleadings ... [t]he appellant need not have expressly presented every theory supporting an argument before the trial court, but can

expand or refine details of an argument otherwise preserved on appeal.

**15.** In *Breeden*, this court held that a city employee's contractual right to a thirty-day notice of termination created a protected property interest. *Id.* at 926.

pay for an AGR member is only payable upon the member being involuntarily released before the scheduled end of a tour, and then it is only available to those who meet the eligibility requirements outlined in DoDPM. The State argues that a member with AGR status cannot place any reasonable reliance upon a benefit that becomes available only in the event that the member is ordered out of the program before his or her tour comes to an end.

The State also points to DoDPM Chapter 4, Section B, 40412, entitled "Limitations of Eligibility":

Service members separated under the following circumstances are not eligible for separation pay:

. . . .

1. A determination is made by the secretary concerned in an extraordinary case that the conditions under which the member is separated do not warrant separation payment. This authority is not to be delegated. It is intended that this discretionary authority to deny payment will be used sparingly.

The State then argues that nothing in the DMVA's regulatory scheme vests Bowen with a right to separation pay.

Bowen maintains that DMVA's determination that he committed acts of misconduct without affording him the opportunity to challenge that accusation, resulting in a loss of $37,030 in separation pay, was a deprivation of a property interest without due process of law.

In our view the fact that separation pay is payable only upon involuntary separation and that there are certain defined situations, such as Bowen's, where it can be reduced or in an "extraordinary" case eliminated does not diminish an employee's legitimate expectation of separation pay upon involuntary termination. Separation pay is a concept defined in DoDPM, Chapter 4, Section B, and the DoDPM rules define the amount of separation pay due an employee. Simply because some involuntarily separated employees may receive less than full separation pay based on a specific finding by the DMVA warranting the decrease under the DoDPM rules, it does not follow that such employees did not have a legitimate expectation of a certain amount of separation pay upon involuntary termination. Nor does it support the conclusion that the pay may be diminished or eliminated in an unfair manner.

As to the process which was provided to Bowen, his request for a pre-termination hearing was denied, as was his request for reconsideration. Thus, Bowen was provided no opportunity for a hearing before his separation pay was reduced.

We conclude, as the superior court did, that Bowen was deprived of a vested property interest in full severance pay and was entitled to a full adversarial hearing consistent with this court's holdings in *City of Homer*, 566 P.2d at 1319–20 and *Nichols*, 504 P.2d at 1365. Bowen was not afforded such a hearing before the deprivation of his severance pay, and thus Bowen was not provided due process under the Alaska Constitution.

We therefore affirm this legal conclusion of the superior court and hold that Bowen has a property interest in full separation pay entitled to due process protection.

2. *Whether sufficient due process to protect Bowen's property interest is provided in the intraservice remedies available to him*

The State argues that even if full separation pay is a benefit entitled to due process protection, Bowen's ability to pursue his eligibility for full separation pay through either the AFBCMR or the Air Force Discharge Review Board is a remedy sufficient to satisfy due process in these circumstances. The State failed to make this argument before the superior court.[16] On this basis alone, we reject this argument. *See supra* pp. 896–897. Moreover, courts have questioned the appropriateness of leaving to administrative

---

16. Although the State argued before the superior court that the requirements of due process had been satisfied, this argument referred only to the procedures in ANGR 35-03. The State did not argue due process was satisfied by virtue of the existence of the AFBCMR or the Air Force Discharge Review Board.

agencies the resolution of constitutional claims. *See supra* n. 13.

### D. *Whether Bowen Is a State Employee and Whether He Is Entitled to the Protections of the Alaska Personnel Act*

■ Bowen, a staff judge advocate serving in the AGR program, was a state employee and a member of the Alaska National Guard subject to state National Guard statutes and regulations. *See U.S. ex rel. Karr v. Castle,* 746 F.Supp. 1231, 1237 (D.Del.1990), *withdrawn in part,* 768 F.Supp. 1087 (D.Del. 1991), *aff'd sub nom. U.S. v. Carper,* 22 F.3d 303 (3d Cir.1994) ("The intent of Congress was, and is, that National Guard personnel serving in the 'Full–Time Manning Program' now included in a DOD program called Active Guard and Reserve (AGR) serve under 32 U.S.C. § 502(f) in conventional National Guard status, i.e., under State control as opposed to service in the active military service of the United States in Reserves of the Army or Reserves of the Air Force status.") (quoting H.R.Rep. No. 943, 97th Cong., 2d Sess. 31 (1982)). As the Supreme Court observed in *Maryland v. United States,* 381 U.S. 41, 48, 85 S.Ct. 1293, 1298, 14 L.Ed.2d 205 (1965), *remanded on other grounds,* 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1965):

> It is not argued here that military members of the Guard are federal employees, even though they are paid with federal funds and must conform to strict federal requirements in order to satisfy training and promotion standards. Their appointment by state authorities and the immediate control exercised over them by the States make it apparent that *military members of the Guard are employees of the States,* and so the courts of appeals have uniformly held.

(Emphasis added.)

■ The determination that Bowen is a state employee does not end the inquiry, however. Alaska Statute 26.05.060 specifies what statutes and regulations apply to members of the Alaska National Guard:

> The governor as ex officio commander of the militia of the state has command of the Alaska National Guard and the Alaska Naval Militia while they are not in active federal service. The governor may adopt necessary regulations for them not inconsistent with 48 U.S.C. § 473–479. Except as otherwise prescribed by those sections, the Alaska National Guard and the Alaska Naval Militia and their members are subject to all federal laws and regulations relating to the National Guard and Naval Militia of the several states and the territories and of the United States.

*See also* AS 26.05.340.[17] Although it has had the power to do so, Alaska has not adopted any regulations concerning the organization, administration or management of state National Guard personnel.

Air National Guard Regulation 35–03 "prescribes policy and procedures for administering and managing full-time National Guard personnel serving in the full-time military duty program under 32 U.S.C. § 502(f)" that were in effect during Bowen's tour of duty.[18] ANGR 35–03, Chap. 1, sec. 1–1. Chapter 6, section 6–5d of ANGR 35–03 sets forth the procedure for involuntary termination. That section contains no provision for a pretermination hearing.

Alaska Statutes 26.05.060 and 26.05.340 specifically provide that Alaska National Guard personnel are subject to the federal laws and regulations relating to the National Guard and any supplemental regulations adopted by the Alaska Adjutant General and approved by the Governor. No such regulations have been adopted. Because no statute

---

**17.** Alaska Statute 26.05.340(d) provides:

All matters relating to the organization, discipline and government of the National Guard or Naval Militia, not otherwise provided for by the laws of the United States, this chapter, or regulations adopted by the president shall be governed by regulations adopted by the adjutant general and approved by the governor, and the regulations when adopted, have the same force and effect as though enacted in this chapter.

**18.** ANGR 35–03 was superseded by Air National Guard Instruction (ANGI) 36–101, effective December 29, 1993. Bowen's involuntary separation occurred in May 1993, while ANGR 35–03 was still in effect, and it is that regulation that applies to this case.

or regulation has been adopted which applies the Alaska Personnel Act to termination of a member of the state National Guard, the hearing protections set forth in the Alaska Personnel Act do not apply to Alaska National Guard personnel.

We further hold that ANGR 35–03, Chapter 6, Paragraph 6–5a, does not mandate that Bowen's involuntary separation comport with all aspects of Alaska state law. The regulation states only that "the state Adjutant General [must] determine[] that all *applicable* laws and regulations have been complied with." (Emphasis added.) By virtue of the failure of the state to adopt regulations which would apply the Alaska Personnel Act to military personnel, as it might have done under AS 26.05.060 and AS 26.05.340 but did not do, we conclude that the personnel act is not applicable to Bowen.

Finally, we disagree with Bowen's contention that the failure to list military employees in AS 39.25.110's list of state employees who are exempt from the personnel act means that the act applies to Bowen. The statute is not an exhaustive list of exempt employees. The statute provides in relevant part:

> *Unless otherwise provided by law,* the following positions in the state service constitute the exempt service and are exempt from the provisions of this chapter and the rules adopted under it....

Thus, exempt status may be derived from provisions of law other than AS 39.25.110. Because the Alaska legislature adopted federal personnel rules and regulations regarding promotion and separation in the Alaska National Guard, it "otherwise provided by law" that Alaska National Guard members were exempt, and thus excluded from the provisions of the Alaska Personnel Act.

We conclude that in the absence of any supplementary regulation pursuant to AS 26.05.060 or AS 26.05.340, the state has adopted federal law and regulation, specifically ANGR 35–03, as setting forth the policies to be followed for administering and managing full-time National Guard personnel. Therefore, we hold that the language of ANGR 35–03, Chapter 6, Paragraph 6–5a, does not cause the Alaska Personnel Act to be applicable to National Guard personnel.

We therefore affirm the holding of the superior court that Bowen is not entitled to the protections of the Alaska Personnel Act.

**E.** *Whether Bowen Has a Due Process Right to a Hearing under Article I, Section 7 of the Alaska Constitution*

Article I, section 7 of the Alaska Constitution provides in part:

> No person shall be deprived of life, liberty or property without due process of law....

This court held in *Nichols,* 504 P.2d at 1362, that for the right to due process to attach, there must be a "state action and deprivation of an individual interest of sufficient weight to warrant constitutional protection." Accordingly, the question in this case is whether Bowen was deprived of a protected liberty interest without due process of law by being denied a pre-termination administrative hearing.

Bowen asserts that he was so deprived. He argues that "[t]he liberty interest requiring a pretermination due process hearing applies any time the government takes action against a public employee by leveling serious charges causing a stigma or other disability to arise against the employee thus foreclosing the employee's freedom to take advantage of other employment opportunities."

Bowen maintains that every time he seeks future employment or attempts to pursue his chosen profession, the practice of law, he may be obliged to explain why a previous termination of employment was for acts of "misconduct." This argument has merit. Although Bowen was provided with two copies of his DD Form 214, one which contained no information concerning his discharge and one which stated that he had been honorably discharged for "misconduct," Bowen could still be asked the reasons for his discharge. Furthermore, the "sanitized" copy of his DD Form 214 does not list any information whatsoever concerning Bowen's discharge, which would very likely prompt questions on the subject during future employment interviews.

Additionally, in today's sophisticated market place, it is reasonable to conclude that

prospective employers understand the language and importance of a DD Form 214. *See Casey v. United States,* 8 Cl.Ct. 234, 242–43 (1985) (prospective employers know and understand the coded designators used on DD–214's and routinely ask discharged servicemen for the forms, "[t]hus, stigmatizing and derogatory information must only be given to servicemen who have been afforded elementary due process rights").

The cited reason for Bowen's discharge, "misconduct," is sufficiently stigmatizing to implicate a liberty interest triggering due process protection in these circumstances. General allegations of misconduct are sufficiently damaging to the reputation of a military employee and an attorney to implicate that employee's liberty interest. We therefore hold that Bowen is entitled to a pretermination administrative hearing under article I, section 7 of the Alaska Constitution, as to his reputation interest in addition to his interest in full severance pay.[19]

### F. Whether Bowen Is Entitled to a Trial De Novo or a Hearing outside the Auspices of the DMVA

■ The superior court held that given Bowen's protected property interest in full severance pay, he was entitled to a pretermination adversarial hearing under *City of Homer,* 566 P.2d at 1319–20, and *Nichols,* 504 P.2d at 1365.

Bowen requested reconsideration of the portion of the superior court's order remanding the case to the DMVA for hearing, arguing that "[t]he undeniable fact is that Bowen cannot receive anything resembling a fair and impartial hearing from any organization, group, board or panel appointed under the control and auspices of the Department of Military and Veteran's Affairs or Alaska National Guard." Bowen appeals from the superior court's denial of reconsideration.

**19.** The superior court concluded that Bowen did not have a property interest in continued employment, and Bowen attacks this determination on appeal. We decline to review this question, be-

Bowen's charge of bias on the part of the DMVA and the Alaska National Guard is not established by the record. Consequently, there is no basis for his claim of entitlement to a trial *de novo.* We therefore affirm the order of the superior court and deny Bowen's request for a trial *de novo.* Bowen may, however, make interim application to the superior court for further relief, once the procedure for his hearing is set by the DMVA, upon a showing that the procedures established by the DMVA are unfair.

### IV. CONCLUSION

For the reasons set out above, we AFFIRM the superior court's determinations that Alaska courts have jurisdiction of this dispute, that Bowen was a state employee, that the Alaska Personnel Act did not apply to him, and that his protected property interest in full severance pay was violated without due process under the Alaska Constitution. We therefore AFFIRM the superior court's order reversing the DMVA's decision to terminate Bowen's employment without first giving him a pretermination hearing, and we AFFIRM the superior court's determination that a trial *de novo* is not required. Having concluded that Bowen had a liberty interest in his reputation under the Alaska Constitution, we REVERSE that portion of the superior court's opinion which held to the contrary. We REMAND the matter to the superior court for remand to the DMVA for a pretermination hearing.

MOORE, J., not participating.

cause our decision that he was deprived of a protected liberty interest in his reputation and must be afforded a hearing on that issue makes this issue moot.